**KANEMATSU CORP, et al., Plaintiffs,**

v.

**M/V GRETCHEN W, et al., Defendants.**

**Civ. No. 93–1437–ST.**

United States District Court,
D. Oregon.

Sept. 15, 1995.

Guy C. Stephenson, C. Kent Roberts, Schwabe Williamson & Wyatt, Portland, OR, for plaintiffs.

Robert I. Sanders, Wood Tatum Sanders & Murphy, Portland, OR, for claimant Black Stallion, Ltd.

## OPINION AND ORDER

ROBERT E. JONES, Judge.

Plaintiffs, Kanematsu Corporation and Kanematsu U.S.A., Inc. (collectively, "Kanemat-

su"), filed this admiralty action in rem and in personam on November 12, 1993, against defendants, the M/V Gretchen W, Black Stallion Ltd., Gretchen W. Ltd., Pacific Carriers Ltd., Denholm Ship Management (Oversees) Ltd., and Hyundai Merchant Marine Company Ltd. Kanematsu alleges that its shipment of corn was damaged in transit from Louisiana to Japan. Kanematsu seeks ¥44,919,928 Japanese Yen (approximately $450,000 U.S. Dollars) in damages.

There are three motions currently before this Court: Black Stallion's motion to reopen this case (# 83), Black Stallion's motion for approval of stipulation waiving time bar defense and for immediate referral of dispute to London arbitration (# 76), and Kanematsu's motion to certify for interlocutory appeal this Court's prior order (# 68). Black Stallion's motions to reopen the case, approve the stipulation, and compel London arbitration are GRANTED. Accordingly, Kanematsu's motion for interlocutory appeal is DENIED.

### BACKGROUND

In November 1993, Kanematsu purchased approximately 37,000 metric tons of corn from Louis Dreyfus Corporation ("Dreyfus"). The contract required Dreyfus to arrange for shipping of the corn from Westwego, Louisiana to various ports in Japan, with Kanematsu as the consignee.[1] Dreyfus chartered the M/V Gretchen W from Hyundai, who in turn had chartered the vessel from Black Stallion, the vessel's owner. Pursuant to this arrangement, Dreyfus and Hyundai entered into a bill of lading.[2]

The bill of lading provided that "[a]ll terms, conditions and provisions of the Strike, Kighterage Clause No. 6 and Arbitration Clause of the 'Centrocon' charter party

[would] apply." Bill of Lading, ¶ 9. The Centrocon charter party is a form of contract designed specifically for the grain trade. It provides that "[a]ll disputes from time to time arising out of this contract shall ... be referred to the final Arbitrament of two Arbitrators carrying on business in London."

When the shipment of corn arrived in Kashima, Japan in December 1992, Kanematsu alleges that much of it had been damaged by exposure to water and heat. Kanematsu then brought suit in Portland, Oregon[3] under the bill of lading.

Defendants moved to stay the proceeding pending arbitration of the dispute in London. The case was heard by Magistrate Judge Stewart on August 4, 1994. She recommended that the London arbitration clause be enforced and that the court stay proceedings pending the outcome of that arbitration. I adopted her Findings and Recommendation on December 7, 1994 and stayed this action pending the Supreme Court's decision in *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* —— U.S. ——, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995), because that case addressed the validity of foreign arbitration clauses in bills of lading. *Sky Reefer* has now been decided, clearing the way for this Court to reopen the present action.[4]

### DISCUSSION

**I. Background of *Sky Reefer***

At the time this action was commenced, there was considerable disagreement among the circuits as to whether foreign arbitration clauses in bills of lading conflicted with the Carriage of Goods by Sea Act, 46 App. U.S.C. § 1300–1315 ("COGSA").[5] The Su-

---

1. A consignee is the party designated to receive the shipped goods from the carrier.

2. A bill of lading is a receipt given by the carrier to the shipper and evinces that a contract of carriage exists between the two. *See* U.C.C. § 1-201(6). It is unclear in this instance who created the bill of lading; Kanematsu asserts that it was created by Hyundai while Black Stallion claims that it was created by Dreyfus. The distinction, however, is not relevant to this analysis.

3. Portland was the location at which M/V Gretchen was arrested and put under the control of a substitute custodian.

4. Accordingly, I grant Black Stallion's motion to reopen the case.

5. *See e.g., Citrus Marketing Bd. of Israel v. M/V Ecuadorian Reefer,* 754 F.Supp. 229 (D.Mass. 1990) (enforcing foreign arbitration clause); *Travelers Indem. Co. v. M/V Mediterranean Star,* 1988 AMC 2483, 1988 WL 78363 (S.D.N.Y.1988); *Mid South Feeds, Inc. v. M/V Aqua Marine,* 1988 AMC 437 (S.D.Ga.1986). *But cf., State Estab-*

preme Court's decision in *Sky Reefer* resolves this conflict.

In *Sky Reefer*, petitioners, a New York fruit distributor and its insurer, sued respondent vessel and carrier company for damage to a shipload of oranges and lemons that were being shipped from Morocco to Massachusetts. Respondents, noting that the bill of lading between the Morrocan fruit supplier and the carrier company contained a provision that required arbitration of all disputes in Tokyo, moved to stay the action pending arbitration. —— U.S. at ——, 115 S.Ct. at 2325. Petitioners responded that the arbitration clause was invalid because it violated COGSA.[6] Specifically, petitioners asserted that the increased costs to petitioners to arbitrate in Tokyo would lessen respondents' liability[7] and that there was no guarantee that foreign arbitrators would apply COGSA's standards. *Id.* Respondents countered that COGSA was not violated and that, even if it was, COGSA was overridden by the FAA.[8] *Id.*

The Supreme Court followed the district court and the First Circuit Court of Appeals in concluding that the arbitration clause did not violate COGSA. The Court explained that the cost and inconvenience of resolving a dispute in a distant forum had no bearing on a carrier's liability for loss or injury. *Id.*, 115 S.Ct. at 2326–2329. The Court also noted that a district court would retain jurisdiction of the case pending arbitration to ensure that a carrier met its legal obligations under U.S. law. *Id.*, 115 S.Ct. at 2330. Because the foreign arbitration clause did not violate COGSA, the Court held that there was no conflict between COGSA and the FAA. *Id.*

## II. Applicability of *Sky Reefer* to the Present Action

■ *Sky Reefer* bears directly on the case at hand. Like the petitioner in that case, Kanematsu wishes to avoid arbitration in a foreign county as required by a routine bill of lading for the shipment of goods it had purchased. Kanematsu also raised the same challenges to the arbitration clause as did the petitioners in *Sky Reefer*—that foreign arbitration would lessen defendants' liability and that it would not ensure that COGSA's provisions were enforced.

Kanematsu attempts to distinguish *Sky Reefer* from the present action by noting that petitioner in *Sky Reefer* was both a shipper and a consignee of the goods in question in that case, whereas Kanematsu is only a consignee.[9] This "innocent consignee" argument is without merit for two reasons.

First, Magistrate Judge Stewart specifically found that Dreyfus acted as an agent for Kanematsu when Dreyfus entered into the bill of lading with Hyundai.[10] Thus, acting

---

*lishment for Agric. Prod. Trading v. M/V Wesermunde*, 838 F.2d 1576 (11th Cir.1988) *cert. den.*, 488 U.S. 916, 109 S.Ct. 273, 102 L.Ed.2d 262 (1988) (rejecting foreign arbitration clause); *Organes Enter. v. M/V Khalij Frost*, 1989 AMC 1460, 1989 WL 37660 (S.D.N.Y.1989); *Siderius, Inc. v. M/V Ida Prima*, 613 F.Supp. 916 (D.C.N.Y.1985).

6. COGSA applies to all bills of lading created for the "carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C.App. § 1300.

7. COGSA prohibits any agreements, including bills of lading, from containing clauses that might lessen a carrier's liability "for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties or obligations provided in this section." 46 U.S.C.App. § 1303(8).

8. The FAA provides:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2.

9. The distinction, according to Kanematsu, is that the shipper is directly involved in the creation of the bill of lading while a consignee is not. The consignee is traditionally only notified about the terms of the bill of lading after it has already been entered into by the carrier and the shipper. Without this direct involvement, Kanematsu asserts that it never adopted the arbitration agreement in the bill of lading and cannot be bound by it. Kanematsu's Memorandum on Reopening Case After Stay—Response to Defendants' Motion for Immediate Referral to London Arbitration, p. 1–3.

10. The Magistrate Judge inferred this agency relationship from the facts that (1) the Kanematsu/Dreyfus contract required Dreyfus to ship the

on Kanematsu's behalf, Dreyfus bound Kanematsu to the bill of lading.

Second, under *Sky Reefer*, the fact that Kanematsu did not sign the bill of lading or directly consent to its conditions does not free it from the terms of the bill of lading. In *Sky Reefer*, the petitioner, Bacchus Associates ("Bacchus"), was a fruit distributor that contracted with a Morrocan fruit supplier, Galaxie Negoce ("Galaxy"), to have fruit shipped from Morocco to the United States. Galaxie then entered into a standard bill of lading created by Nichiro Gyogyo Kaisha, Ltd. ("Nichiro"), a carrier company temporarily in control of the shipping vessel. Bacchus, like Kanematsu, had no direct involvement with the bill of lading but merely received it from Galaxy after the ship had already commenced its voyage. Nonetheless, the Supreme Court enforced the arbitration clause against Bacchus. —— U.S. at ——–——, 115 S.Ct. at 2326–2329. Therefore, the same result is compelled in the present situation.

■■■ Third, when a party brings suit for damaged goods under the terms of a bill of lading,[11] that party consents to all of the conditions of the bill of lading. *All Pacific Trading Inc. v. M/V Hanjin Yosu*, 7 F.3d 1427, 1432 (9th Cir.1993), *cert. den.*, —— U.S. ——, 114 S.Ct. 1301, 127 L.Ed.2d 653 (1994) ("[a]t the very least, plaintiff's initiation of this suit constituted acceptance of the terms of the ... bills of lading); *see also, Citrus Marketing Bd. of Israel*, 754 F.Supp. at 231.

For these reasons, I find that Kanematsu's failure to sign or expressly consent to the bill of lading is irrelevant; Kanematsu is bound by its terms.

### III. The Parties' Motions

Because Kanematsu is bound by the conditions of the bill of lading and, under *Sky Reefer*, the bill of lading's foreign arbitration clause does not conflict with COGSA, Kanematsu must arbitrate its dispute with Black Stallion and the other defendants in London. This decision squares with the Supreme Court and Congress' strong preference to promote arbitration agreements.[12] Moreover, judicial economy is promoted by requiring a unified proceeding because the defendants will be arbitrating the dispute among themselves in London regardless of Kanematsu's presence.

Contrary to Kanematsu's assertion, the order does not produce an inequitable result. First, Kanematsu is a very large company that is familiar with the international grain trade and with the customary contractual provisions for arbitration of disputes. Second, Kanematsu, a major Japanese importer and exporter, should not have to exert much more effort settling this dispute in London rather than Portland, Oregon. Third, the London arbitration will be conducted by persons familiar with the shipping and/or grain trades. Fourth, as the Supreme Court noted, if the arbitrators do not make findings consistent with the mandate of COGSA, "[t]he district court [which] has retained jurisdiction over the case and 'will have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the ... laws has been addressed.'" *Id.*, —— U.S. at ——–——, 115 S.Ct. at 2329–30 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 638, 105 S.Ct. 3346, 3360, 87 L.Ed.2d 444 (1985). Finally, Black Stallion agreed to waive any statute of limitations

---

goods to Japan, and (2) Kanematsu did not provide either the court or Black Stallion with a copy of the contract clarifying the relationship between Kanematsu and Dreyfus. Findings and Recommendation, pp. 8–9.

11. Though the bill of lading evinces a contract between the shipper and the carrier, a consignee may bring suit under the bill of lading for damaged goods. *See Aetna Insurance Co. v. SS Ortiguera*, 583 F.Supp. 671 (S.D.N.Y.1984); *Amerada Hess Corp. v. S.S. Phillips Oklahoma*, 558 F.Supp. 1164 (S.D.N.Y.1983).

12. *Volt Information Scis., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989) ("due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration"); *see also, Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983).

defenses it could have asserted, so there is no threat that Kanematsu's claims will not be heard on their merits in London.[13]

As discussed above, Kanematsu is clearly bound by the London arbitration clause. Therefore, Kanematsu's motion for certification for interlocutory appeal is DENIED.[14]

## CONCLUSION

IT IS ORDERED that Black Stallion's motion to reopen this case (# 83–1) and for immediate referral to London arbitration (# 83–2) are GRANTED.

IT IS FURTHER ORDERED that Black Stallion's motion for approval of stipulation waiving time bar defense and for immediate referral of dispute to London arbitration (# 76) is GRANTED.

IT IS FURTHER ORDERED that Kanematsu's motions to modify and certify for interlocutory appeal this Court's prior order (# 68–1 and 68–2) are DENIED.

This Court will retain jurisdiction pending arbitration and may enforce the arbitration award as needed with respect to the bond which has been posted.

---

**13.** Toward this end, I grant Black Stallion's motion for approval of stipulation waiving time bar defense.

**14.** Regarding Kanematsu's motion for interlocutory appeal, orders certifying a case for interlocutory appeal are governed by 28 U.S.C. § 1292(b). It provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for

difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Kanematsu's motion for interlocutory appeal is premised upon the previous split among the circuits. Because *Sky Reefer* resolves this conflict, the issue of the applicability of foreign arbitration clauses in bills of lading is no longer a "controlling question of law as to which there is substantial ground for difference of opinion."