UNION STEEL AMERICA CO., A
Division of Dongkuk International, Inc., Plaintiff,

v.

M/V SANKO SPRUCE, her engines, boilers, furniture, appurtenances, etc. *in rem,* Yukong Line Limited, Spruce Maritime S.A., The Sanko Marine Co., Ltd. and Transocean Maritime Services, Inc., Defendants.

No. CIV. A. 97–5696 (JEI).

United States District Court,
D. New Jersey.

July 20, 1998.

Hollstein, Keating, Cattell, Johnson & Goldstein, P.C. by E. Michael Keating, III,

Voorhees, NJ, for plaintiff Union Steel America Co.

Cichanowicz, Callan, Keane, Vengrow & Textor, LLP by Stephen H. Vengrow, Providence, NJ, for defendants Yukong Line Limited, Spruce Maritime S.A., and The Sanko Marine Co., Ltd.

Marshall, Dennehey, Warner, Coleman & Goggin, P.C. by John S. Tucci, Jr., Philadelphia, PA, for defendant Trans–Ocean Maritime Services, Inc.

*OPINION*

IRENAS, District Judge.

This matter comes before this Court on the motion of defendants Yukong Line Limited ("Yukong Line"), Spruce Maritime S.A. ("Spruce Maritime"), and The Sanko Marine Co., Ltd. ("Sanko Marine") for enforcement of a forum selection clause and dismissal of the complaint of Union Steel America ("Union Steel"). For the reasons that follow, this Court will enforce the forum selection clause but will dismiss plaintiff's action only as against Yukong Line.

## I. BACKGROUND

On October 7, 1996, plaintiff Union Steel [1] delivered a cargo of 473 bundles of hot dipped steel fence pipe to the vessel M/V Sanko Spruce in Busan, Korea. Union Steel says that the cargo was then in good condition. According to Union Steel, when the cargo was discharged in Camden on November 27, 1996, it was rusted, bent, scratched and otherwise damaged.

On November 26, 1997, Union Steel filed a two-count complaint. Count I alleges that defendants M/V Sanko Spruce,[2] Yukong Line Limited, Spruce Maritime S.A., and The San-

ko Marine Co., Ltd.[3] ("defendants") are liable for negligence, breach of contract and the unseaworthiness of the vessel. Count II alleges that defendant Trans–Ocean Maritime Services,[4] Inc. is liable for negligence and breach of warranty.

Now pending is defendants' motion for dismissal based on a forum selection clause in the pertinent bills of lading.

## II. DISCUSSION

Carriage of the cargo in this case was pursuant to the terms and conditions of bills of lading issued by Yukong Line. At the center of the dispute on the motion for dismissal is clause thirty-two of the bills which provides as follows:

(Jurisdiction): Any dispute arising under this bill of lading shall be decided in the country where the Carrier has his principal place of business, and the law of such country shall apply except as provided elsewhere herein.

Without prejudice to the foregoing, the carrier has the option to elect to have any disputes arising under the bill of lading submitted to arbitration in New York, before and in accordance with the rules of the Society of Maritime Arbitrators and subject to U.S. law.

Defendants assert that Union Steel must proceed in Korea where the carrier, Yukong Line, has its principal place of business. Allowing that this Court might find that Spruce Maritime was the carrier, defendants argue in the alternative that Union Steel must proceed in Japan where Spruce Maritime is based. In either event, defendants argue, this Court is an improper forum.

---

**1.** Union Steel is wholly owned by Union Steel Manufacturing Co. Ltd., a Korean company based in Seoul, Korea.

**2.** As discussed below, *see infra* at Pt. II.D.1.d., Union Steel has an *in rem* action against the M/V Sanko Spruce pending in the district court for the district of Oregon. Union Steel has moved that court to transfer the *in rem* action to this Court for consolidation.

**3.** Yukong Line Limited, a Korean corporation now known as SK Shipping Co. Ltd., was time

charterer of the vessel. Spruce Maritime S.A., a Japanese corporation, was owner of the vessel. The Sanko Marine Co., a Japanese corporation with the same address as Spruce Maritime, is identified as owner of the vessel in the complaint; plaintiff also has suggested that The Sanko Marine Co. was the vessel's manager.

**4.** Trans–Ocean Maritime Services, Inc., a New Jersey corporation, provided the stevedoring services in Camden.

## A. *Timeliness of Motion*

Union Steel asserts that defendants' motion is untimely. Defendants have not specified under what rule they are moving for dismissal.

There is no consensus concerning the proper procedural mechanism (i.e., Federal Rules of Civil Procedure 12(b)(1),(3) or (6)) to be used in bringing a motion to dismiss a case on the basis of a forum selection clause. *See New Moon Shipping Co. v. Man B & W Diesel Ag*, 121 F.3d 24, 28–29 (2d Cir.1997); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 322 (9th Cir.1996). If the motion is brought pursuant to 12(b)(3) or 12(b)(6), then defendants were required to raise the improper forum defense in their first responsive pleading. If the motion is brought under 12(b)(1) for lack of subject matter jurisdiction, then it may be brought at any time, as defendants never waive lack of subject matter jurisdiction as a defense.

Defendants answered the complaint on February 9, 1998, raising improper forum as an affirmative defense, and amended their answer on February 20, 1998, again raising the improper forum defense. Regardless of how the motion is viewed as a procedural matter, then, defendants' motion is timely.

## B. *Identity of the Carrier*

Effective resolution of this case requires this Court to determine who "the carrier" is for purposes of the forum selection clause. The answer to this question will determine which forum is appropriate.

While the shipment at issue here is covered by the Carriage of Goods by Sea Act ("COGSA"), and there are specific rules for determining which entities are COGSA carriers, the instant question is one of contract interpretation. That is, since the bills of lading constitute a contract, the question of who the parties meant to identify by "the carrier" in the forum selection clause is one concerning their expressed contractual intent.

█ The parties' expressed intent is that the "carrier" is Yukong Line. Spruce Maritime owns the M/V Sanko Spruce, but it was not a party to the contract of carriage. Nor was Spruce Maritime a party to the contract. Yukong Line, time charterer of the M/V Sanko Spruce, was a party to the contract. It accepted advance payment on its own behalf for carriage of Union Steel's goods, and signed the bills of lading "as carrier." There is no suggestion that Yukong Line was signing on behalf of the ship's owner (i.e., "for the Master"). Moreover, the forum selection clause gives the "carrier" the right to opt for arbitration in New York. It is an implausible reading of the contract to suggest that the parties to the contract—Union Steel and Yukong Line—intended to give some third-party the right to dictate where Union Steel and Yukong must litigate. Nor does it make sense to suggest that Union Steel and Yukong agreed that disputes were to be resolved in the forum where some third-party has its principal place of business.

Union Steel points to the "definitions" clause of the bills which states that "carrier" means the "owner" or "demise charterer." Yukong Lines was neither the "owner" nor the "demise charterer." But the terms of the bills of lading must be read in context. The bills of lading are labeled as being Yukong Line's bills of lading. The bills indicate that freight was prepaid to Yukong Line, and Yukong Line signed as "carrier." Only excessive formalism could yield any conclusion other than that Yukong Lines was the entity to which the parties meant to refer by "carrier."

Union Steel also points to clause thirty which provides that "the contract evidenced by this bill of lading is between the merchant and the owner of the vessel named herein (or substitute)." This clause further provides:

> If, despite the foregoing, it is adjudged that any other is the carrier and/or bailee of the goods shipped hereunder, all limitations of and exonerations from, liability provided for by law or by this Bill of Lading shall be available to such other. It is further understood that as the Line, Company or Agent who has executed this Bill of Lading for and on behalf of the master is not a principal in the transaction, said Line, Company or Agents shall not be under any liability arising out of the con-

tract of carriage, nor as carrier nor bailee of the goods.

Clause thirty does not defeat the conclusion that Yukong Line is the carrier. First, the clause contemplates that a party other than the owner can be the carrier. Second, that portion of the clause stating that a "Line, Company or Agent who has executed" the bill "for or on behalf of the master" is not a principal and shall not be liable under the contract or as carrier, is irrelevant because Yukong signed the bills "as Carrier," not "for the Master."

In conclusion, this Court finds that Yukong is "the carrier" for purposes of the forum selection clause. Yukong Line does not seek New York arbitration. If the forum selection clause is otherwise enforceable, then the proper forum for the dispute between Union Steel and Yukong Line is Korea. Union Steel appears to concur in this conclusion, for in arguing that its claims will be disadvantaged if it is forced to proceed in a foreign forum, Union Steel discusses Korean law exclusively. The discussion turns now to the enforceability *vel non.* of the forum selection clause.

### C. Presumptive Enforceability of the Forum Selection Clause

■ "[Forum selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *see Foster v. Chesapeake Ins. Co.,* 933 F.2d 1207, 1219 (3d Cir.), *cert. denied,* 502 U.S. 908, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991). "Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness

of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state." *Haynsworth v. The Corporation,* 121 F.3d 956, 963 (5th Cir.1997) (internal quotes omitted)(citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)), *cert. denied,* —— U.S. ——, 118 S.Ct. 1513, 140 L.Ed.2d 666 (1998).

■ In addition, where, as here, the shipment at issue is covered by the Carriage of Goods at Sea Act ("COGSA"),[5] and the Harter Act,[6] a forum selection clause is "null and void and of no effect" if it relieves the carrier or ship from COGSA or Harter Act liability or lessens such liability. 46 U.S.C.App. § 190; *id.* § 1303(8).

■ It is the burden of the party seeking to avoid enforcement of the foreign forum selection clause to show that the clause is "unreasonable" for one of these enumerated reasons. *The Bremen,* 407 U.S. at 10, 15, 92 S.Ct. 1907; *Mitsui & Co. (USA) v. Mira M/V,* 111 F.3d 33, 35 (5th Cir.1997) (per curiam); *see Foster,* 933 F.2d at 1219.

Before considering Union Steel's argument that enforcement of the forum selection clause would be unreasonable, this Court addresses its claim that the clause is not entitled to the presumption of validity attaching generally to forum selection clauses.

### 1. Adhesion Contract

■ Union Steel argues that there is no presumption of validity because the forum selection clause at issue is part of an adhesion contract. This argument has been rejected by courts which have considered it. *Fireman's Fund Ins. Co. v. M.V. DSR Atlantic,* 131 F.3d 1336, 1338 (9th Cir.1997); *Mitsui,* 111 F.3d at 36–37; *see also Industria Fotografica Interamericana v. M.V. Jalisco,* 903 F.Supp. 18, 20 (S.D.Tex.1995); *Kanematsu Corp. v. M/V Gretchen W,* 897 F.Supp. 1314, 1316–17 (D.Or.1995). Where the agreement is "an arms'-length deal, be-

---

5. COGSA, 46 U.S.C.App. §§ 1300–1315, applies to bills of lading for shipments of cargo to or from a United States port in foreign trade. *Id.* § 1300.

6. The Harter Act, 46 U.S.C.App. §§ 190–196, applies to the transportation of cargo from or between ports of the United States and foreign ports. *Id.* § 190.

tween sophisticated commercial entities," the lack of "actual negotiations over the [forum selection] clause does not affect its validity." *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir.1991).

### 2. *Mandatory Language in the Forum Selection Clause*

Union Steel contends that no presumption of validity should apply here because the forum selection clause is "permissive" rather than "mandatory and exclusive."

 "The general rule in cases containing forum selection clauses is that when only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers & Distributors Inc.*, 22 F.3d 51, 52 (2d Cir.1994) (internal quotes and alteration omitted) (citing cases). Thus, "[t]he choice of forum must be mandatory rather than permissive." *Id.* at 53; *see Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994); *John Boutari and Son*, 22 F.3d at 53; *Bison Pulp & Paper Ltd. v. M/V PERGAMOS*, 1996 AMC 2022, 2033, 1995 WL 880775 (S.D.N.Y.1995). To assess whether a forum selection clause is mandatory, the court looks to the wording of the agreement and applies ordinary principles of contract interpretation. *John Boutari and Son*, 22 F.3d at 53.

 The clause here reads:

Any dispute arising under this bill of lading shall be decided in the country where the Carrier has his principal place of business, and the law of such country shall apply except as provided elsewhere herein. Without prejudice to the foregoing, the carrier has the option to elect to have any disputes arising under the bill of lading submitted to arbitration in New York, before and in accordance with the rules of the Society of Maritime Arbitrators and subject to U.S. law.

This clause is mandatory and exclusive. It states that any dispute "*shall* be decided" in the forum specified. It is not a clause which by providing that a certain forum *shall* have jurisdiction leaves open the question whether

such provision was intended to mean that no other forum shall be appropriate. The *Bison Pulp* court found identical language to be "mandatory" after performing a thorough analysis. 1996 AMC at 2034–36. Plaintiff's attempt to distinguish this case is not persuasive.

Union Steel asserts that the clause is not mandatory or exclusive because the carrier has the option to elect for arbitration in New York. This Court disagrees. Union Steel cites no supporting authority on point. The clause is mandatory and exclusive despite the provision allowing Yukong to opt for arbitration in New York: it mandates that litigation take place in one of two contemplated fora and thereby excludes all other fora.

Union Steel argues that the clause is not mandatory or exclusive because ambiguity as to which entity is the "carrier" might induce a plaintiff to file suit in the wrong forum. Union Steel also argues that if defendants require a determination by this Court as to which party is the carrier, then "how and why should plaintiff be expected to make that determination." These points do not compel the result Union Steel seeks.

That a potential plaintiff cannot be certain as to where it should bring suit does not mean that the forum selection clause no longer is mandatory. If the clause is not clear, and the parties dispute its meaning, then litigation might be necessary to secure a controlling interpretation. But this contractual provision does not cease to bind simply because it requires a court to interpret it. If a court ruling is necessary to decide who the "carrier" is, it still will be the case that the forum must be that carrier's home forum, or, at its election, New York arbitration.

### 3. *Validity of Foreign Forum Selection Clauses in Bills of Lading Covered by COGSA*

 Union Steel argues that, under a line of cases striking down foreign forum selection clauses covered by COGSA, the foreign forum selection clause in this case is *per se* invalid. This Court rejects that argument and finds that the general presumption of validity attaches to the clause in this case.

For purposes of this discussion and the remainder of this opinion, this Court assumes that a Korean court will apply the Korean Commercial Code rather than COGSA.[7]

COGSA applies to bills of lading for shipments of cargo to or from a United States port in foreign trade. 46 U.S.C.App. § 1300. It creates a regime of carrier and ship obligations, liabilities, rights and immunities. Section 3(8) of COGSA provides, in pertinent part,

Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect.

*Id.* § 1303(8).

"Prior to the United States Supreme Court's decision in *Vimar Seguros y Reaseguros S.A. v. M/V Sky Reefer*, 515 U.S. 528[, 115 S.Ct. 2322, 132 L.Ed.2d 462] ... (1995), the majority of courts confronted with enforcement of foreign forum selection clauses in bills of lading concluded that § 3(8) of COGSA ... rendered them invalid." *Tradearbed, Inc. v. M/V Agia Sofia*, 1997 AMC 2838, 2841, 1997 WL 769525 (D.N.J.1997) (footnote omitted).

The leading case was *Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200 (2d Cir.1967) (en banc). In *Indussa*, the Second Circuit court reasoned that: (1) such clauses put a high hurdle in the way of enforcing liability and assist carriers in securing settlements lower than the ones they would obtain if shippers could sue in a convenient forum; (2) "[a] clause making a claim triable only in a foreign court could almost certainly lessen liability if the law which the court would apply was neither [COGSA] nor the Hague Rules," and (3) even where COGSA will be applied, "there c[an] be no assurance that [the foreign court] w[ill] apply [COGSA] in the same way as would an American tribunal subject to the uniform control of the Supreme Court." *Id.* at 202–04. The Second Circuit read § 3(8) of COGSA "as covering a potential and not simply a demonstrable lessening of liability," and held that Congress had "outlawed clauses prohibiting American courts from deciding cases otherwise properly before them." *Id.* at 204; *see also Sun Oil Co. of Pa. v. M/T Carisle*, 771 F.2d 805, 814 (3d Cir.1985) ("So strong is COGSA's policy to preclude clauses lessening the carrier's liability that [the Second Circuit] ... held that section 3(8) precluded a clause that required an American plaintiff to assert his claim only in a foreign court.").

After *Indussa*, the federal courts of appeals invalidated foreign forum selection clauses under COGSA "without exception." *Sky Reefer*, 515 U.S. at 533, 115 S.Ct. 2322. Moreover, some federal courts applied the *Indussa* rule to strike down foreign arbitration clauses as well. *Id.* at 534. In *Sky Reefer*, a case involving a foreign arbitration clause, the Supreme Court held that foreign arbitration clauses are not invalid under COGSA in all circumstances. *Id.* at 541, 115 S.Ct. 2322. Where such a clause is challenged, the controlling question is "whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees." *Id.* at 539, 115 S.Ct. 2322.

Union Steel contends that *Sky Reefer* did not overrule *Indussa*. It argues that *Sky Reefer* held only that foreign *arbitration* clauses are not presumptively invalid, and that *Sky Reefer* in fact supports finding the forum selection clause here invalid without investigating how Korean law would affect the carrier's liability. In contrast, defendants read *Sky Reefer* as dictating that foreign forum selection clauses are presumptively valid, and as requiring a showing that

7. The forum selection clause states that the law of the foreign forum shall apply "except as provided elsewhere herein." Clause thirty-one ("Local Clause") provides that "[a]s regards goods moving to and from USA, this bill of lading shall have effect subject to the provisions of [COGSA]." The parties disagree about whether or not a Korean court can be counted upon to apply COGSA. This Court need not make a forecast on this front, as the result reached in this case would be the same whether the Korean court applies COGSA or the Korean Commercial Code.

the application of Korean law will reduce the carrier's obligations below what COGSA guarantees.

At issue in *Sky Reefer* was a foreign arbitration clause. The Court began its analysis by observing that *Indussa* was the leading case for invalidation of foreign forum selection clauses. It summarized two parts of *Indussa's* rationale for treating foreign forum selection clauses as *per se* invalid: the inconvenience of the foreign forum will allow carriers to secure lower settlements, and there is a lack of assurance that the foreign forum will apply COGSA as an American tribunal would. The Court then stated:

> As foreign arbitration clauses are but a subset of foreign forum selection clauses in general ... the *Indussa* holding has been extended to foreign arbitration clauses as well.... The logic of that extension would be quite defensible, but we cannot endorse the reasoning or the conclusion of the *Indussa* rule itself.

515 U.S. at 534, 115 S.Ct. 2322 (citations omitted). The Court rejected the view that the inconvenience and cost of foreign litigation "lessens liability" within the meaning of COGSA. *Id.* at 535–37, 115 S.Ct. 2322. The Court also criticized "skepticism over the ability of foreign arbitrators to apply COGSA or the Hague Rules," stating that reliance on *Indussa* "must give way to contemporary principles of international comity and commercial practice." *Id.* at 537, 115 S.Ct. 2322. Concern for the United States' role in international law making, the Court said, "counsels against ... insular distrust of the ability of foreign arbitrators to follow the law." *Id.* at 539, 115 S.Ct. 2322.

The Court next turned to the argument that there was no guarantee that foreign arbitrators would apply COGSA, and that COGSA liability might be reduced under foreign law. The Court stated that it is not necessary that the foreign forum apply COGSA. "The relevant question" under § 3(8) of COGSA, the Court explained, "is whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees." *Id.* The Court went on to find that, whatever the merits of the comparative reading of COGSA

and its foreign counterpart, the appellant's claim was premature: it was not known what law the arbitrators would apply or that the petitioner would receive diminished protection as a result.

Since respondents sought only to have the arbitration clause enforced, and since the district court retained jurisdiction to ensure that the legitimate interest in the enforcement of the laws was addressed, "mere speculation that the foreign arbitrators might apply Japanese law which ... might reduce respondents' legal obligations, d[id] not in and of itself lessen liability under COGSA § 3(8)." *Id.* at 540–41, 115 S.Ct. 2322. The Court also cautioned:

> Were there no subsequent opportunity for review and were we persuaded that the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's rights to pursue statutory remedies ..., we would have little hesitation in condemning the agreement as against public policy.

*Id.* at 540, 115 S.Ct. 2322 (internal quotes omitted, alteration in original).

In his dissent, Justice Stevens presumed that the majority's view that the imposition of substantial costs on shippers does not lessen COGSA liability would apply to forum selection as well as arbitration. *Id.* at 548 n. 7, 115 S.Ct. 2322 (Stevens, J., dissenting). Justice O'Connor chided the majority for rejecting the reasoning and conclusion of *Indussa* without qualification, since the Court did not need to reject all of that case's reasoning in order to reach its holding in *Sky Reefer*. *Id.* at 542 (O'Connor, J., concurring in the judgment).

While the Third Circuit has not addressed *Sky Reefer*, a number of courts have stated or implied that *Sky Reefer* "overruled" *Indussa*, and that *Sky Reefer* does apply to foreign forum selection clauses. *See, e.g., Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336, 1339 (9th Cir.1997); *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 36 (5th Cir.1997) (per curiam); *Talatala v. Nippon Yusen Kaisha Corp.*, 974 F.Supp. 1321, 1324 n. 4 (D.Haw.1997); *Tradearbed v. M/V Agia Sofia*, 1997 AMC 2838,

2843, 1997 WL 769525 (D.N.J.1997); *Great American Ins. Co. v. Kapitan Byankin*, No. 96–0258, 1996 WL 756863, *1 (N.D.Cal. Aug.1, 1996); *Pasztory v. Croatia Line*, 918 F.Supp. 961, 965 (E.D.Va.1996); *Nippon Fire & Marine Ins. Co. v. M.V. Egasco Star*, 899 F.Supp. 164, 170 n. 8 (S.D.N.Y.1995), *aff'd*, 104 F.3d 351, 1996 WL 614811 (2d Cir.1996) (table); *see also J.C.B. Sales Ltd. v. Wallenius Lines (Wallenius Lines North America Inc.)*, 124 F.3d 132, 137 (2d Cir. 1997) (citing *Indussa* as "overruled" by *Sky Reefer*). *But see In re Deleas Shipping Ltd.*, 1996 AMC 434, 436 (W.D.Wash.1995) (stating that *Sky Reefer* dealt only with foreign arbitration clauses).

These courts have relied on the majority's rejection of *Indussa's* reasoning and conclusion—and in some cases on the statements of Justices O'Connor and Stevens as well—to conclude that foreign forum selection clauses are presumptively valid. Faced with claims concerning the application of foreign law, these courts have asked the *Sky Reefer* question—i.e., "whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees."

Commentators have rejected this broad reading of *Sky Reefer*. *See* Elizabeth A. Clark, *Foreign Arbitration Clauses and Foreign Forum Selection Clauses in Bills of Lading Governed by COGSA: Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 1996 B.Y.U. L.Rev. 483 [hereinafter, "Clark, *Foreign Arbitration Clauses* "]; Stanley L. Gibson, *Sky Reefer Muddies the COGSA Waters*, 9 U.S.F. Mar. L.J. 1, 21–26 (1996) [hereinafter, "Gibson, *Sky Reefer* "]. They criticize courts for failing to analyze *Sky Reefer* and for relying on "dicta" in *Sky Reefer* purporting to reject *Indussa* in its entirety. *See* Clark, *Foreign Arbitration Clauses*, at 493–94; Gibson, *Sky Reefer*, at 23.

One observer criticizes courts for failing to parse the inconvenient forum issue from the choice-of-law issue as the *Sky Reefer* Court had done. Gibson, *Sky Reefer*, at 21–26 (1996). While the *Sky Reefer* Court did accept the risk that a foreign arbitrator would apply COGSA incorrectly or apply foreign law which is not equivalent to COGSA, it did

so only because the district court would be able to review (and possibly reject) the arbitration decision. *Id.* at 23. However,

> [n]o such opportunity exists when a party is forced to litigate in a foreign forum. Thus, the rationale for permitting foreign arbitrators to "take a stab" at applying COGSA, or a regime that may produce an equivalent result, evaporates in the context of foreign forum selection clauses.

*Id.* at 25. Similarly, in *Sky Reefer*, Justice O'Connor pointed out the crucial distinction between foreign arbitration clauses and foreign forum selection clauses: the former "do not divest domestic courts of jurisdiction."

> That difference is an important one—it is, after all, what leads the Court to dismiss much of petitioner's argument as premature—and we need not decide today whether *Indussa*, insofar as it relied on considerations other than the increased cost of litigating in a distant forum, retains any vitality in the context of true foreign forum selection clauses.

*Id.* 515 U.S. at 542, 115 S.Ct. 2322 (O'Connor, J., concurring in the judgment).

Under this reading of the case, *Indussa's* concern that "[a] clause making a claim triable only in a foreign court could almost certainly lessen liability if the law which the court would apply was neither [COGSA] nor the Hague Rules," 377 F.2d at 203, remains material. Similarly, *Sky Reefer* did not disturb the *Indussa* court's critical view of district courts being "obligated to forecast the result of litigation in a foreign court or attempt other expedients to prevent a lessening" of rights, where "there can be no real assurance that the prophecy will be validated by the result." *Indussa*, 377 F.2d at 202. Even after *Sky Reefer*, argues one observer, "the best way to comply with Congress' mandate and to avoid the uncertainties associated with enforcing foreign forum selection clauses is not to enforce them at all." Gibson, *Sky Reefer*, at 26.

The argument, then, is for continued adherence to the rule that foreign forum selection clauses are *per se* invalid under COGSA because of the inherent "potential" that foreign law will make the carrier's liabil-

ity less than what COGSA guarantees. The argument is bolstered by *Sky Reefer's* admonition that it "would have little hesitation in condemning" a forum clause if it operated "as a prospective waiver of a party's rights to pursue statutory remedies." 515 U.S. at 540, 115 S.Ct. 2322.

Having given this issue careful consideration, this Court concludes that while *Indussa* was not discredited altogether or "overruled" by *Sky Reefer* as some courts have suggested, its rule is not viable. The potential for a reduction in COGSA liability due to the application of foreign law is a serious concern. It also is true that the *Sky Reefer* Court recognized the continuing vitality of this concern by stressing the availability of district court review of the foreign forum's conclusions in the arbitration context. Further, it remains the case that district court statements about how a foreign law might operate to reduce a carrier's COGSA liability always will be mere predictions.

However, other considerations argue against finding foreign forum selection clauses *per se* invalid under COGSA. First, since *The Bremen*, the Supreme Court consistently has articulated a strong preference for enforcing contractual forum selection clauses. The Supreme Court never adopted the *Indussa* rule.[8]

Second, the animating concerns of COGSA are not implicated in this type of case. COGSA, like other countries' carriage of goods on the sea acts, is in most pertinent respects simply the 1924 Hague Rules. *Sun Oil Co. of Pa. v. M/T Carisle*, 771 F.2d 805, 810 (3d Cir.1985). The impetus for these rules was the international community's experience with carriers using "their superior bargaining power to insert into bills of lading clauses which exempted them from liability for loss of or damage to the cargo even if caused by their own negligence." *Id.* at 809.

Yukong Lines' bills of lading are not even a remote attempt to ensure that the law to be applied will relieve it from COGSA liability. This action involves a carrier utilizing a foreign forum selection clause merely to en-

sure for itself a convenient forum. Indeed, Yukong Lines' bill of lading provides that, "[a]s regards goods moving to and from the USA, this bill of lading shall have effect subject to the provisions of [COGSA]." That is, far from trying to escape COGSA, Yukong Lines itself contemplated that COGSA would control the question of its liability.

Finally, many countries have enacted carriage of goods on the sea acts which, like COGSA, are lifted from the Hague Rules or which reflect the principles of carrier liability embodied in COGSA. The Korean Commercial Code fits in the latter category. (*See* Choi Dec. ¶ 11). A principal theme in *Sky Reefer* is respect for foreign tribunals and their laws. 515 U.S. at 537–38, 115 S.Ct. 2322. Under these circumstances, it stretches § 3(8) of COGSA too far to say that it flatly invalidates a forum selection clause simply because there exists the potential that the foreign forum will apply its own law to the detriment of the shipper's COGSA rights.

In sum, while *Sky Reefer* did not render *Indussa* a dead letter in all regards, this Court will not breathe new life into the rule that foreign forum/law selection clauses are *per se* invalid. The better view is that such clauses are presumptively valid, and that the burden is on the party seeking to avoid enforcement of the clause to show that there is a likelihood that "the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees." *Sky Reefer*, 515 U.S. at 539, 115 S.Ct. 2322.

The discussion now turns to whether Union Steel has made this showing, or has shown that enforcement of the forum selection clause would be unreasonable for some other reason.

D. *Reasonableness of the Forum Selection Clause*

1. *COGSA Liability*

 Union Steel argues that application of the Korean Commercial Code ("KCC") will

---

8. *The Bremen* Court acknowledged *Indussa*, but distinguished it as a case implicating COGSA.

407 U.S. at 10 n. 11, 92 S.Ct. 1907.

reduce Yukong Lines' obligations below what COGSA guarantees. Again, while it is not certain which law that a Korean court would apply, this Court assumes that it would apply the KCC.

At the outset, this Court notes that, although Korea is not a signatory to the 1924 Hague Convention upon which COGSA is based, Korea's carriage of goods by sea law effectively adopts the major principles of the Hague Rules, including those pertaining to the duties and responsibilities of a carrier. (Choi Dec. ¶ 11). Several post-*Sky Reefer* cases have rejected various claims that Korean law reduces carrier liability below what COGSA guarantees. *See Fireman's Fund v. M.V. DSR Atlantic,* 131 F.3d 1336 (9th Cir. 1997); *Hyundai Corp. U.S.A. Inc.,* 97–3855(RPP) (S.D.N.Y. Jan. 13, 1998) (unpublished opinion); *International Marine Underwriters CU v. M/V Kasif Kalkavan,* 97–3163(JSR) (S.D.N.Y. Jan. 7, 1998) (unpublished opinion) *Tradearbed, Inc. v. M/V Agia Sofia,* 1997 AMC 2838, 1997 WL 769525 (D.N.J.1997).[9]

### a. *COGSA Duties*

Union Steel argues that while COGSA requires the carrier to make the vessel seaworthy and to man, equip and supply the ship properly, the KCC section pertaining to the carriage of goods does not. This argument is not persuasive. Nothing in the affidavit of Union Steel's Korean law expert is addressed to this proposition. Moreover, the KCC includes a provision which contradicts Union Steel's account of Korean law on this score. *See* KCC Part I, Ch. 4, Art. 787 ("Duty to Exercise Due Diligence in Connection with Seaworthiness").

### b. *Multiple Carrier Liability*

Union Steel argues that COGSA liability will be reduced because the Korean court will not recognize more than one entity as carrier. This concern is moot. First, it is clear

that Korean law will recognize Yukong Line as carrier. Second, for reasons set forth below, this Court finds that Union Steel is free to pursue its claims against Sanko Marine and Spruce Maritime in this Court where COGSA will determine whether or not those entities were carriers.

The bills of lading are contracts between Union Steel and Yukong Line. The rights and duties existing thereunder are rights and duties as between these two parties and these two parties alone. The forum selection clause gives Yukong Lines the right to have disputes between it and Union Steel arising under the contract litigated in a particular forum. The bills do not confer this right upon third-parties. Nor do they give Yukong Lines the right to require that Union Steel's disputes with such entities be litigated in the foreign forum. The forum selection clause does not contain such a provision. Moreover, Union Steel's dispute with Sanko Marine and Spruce Maritime is not one "arising under" the bills of lading.[10]

Defendants disagree with this conclusion. In their view, the words "any dispute" means that any dispute involving any parties related to the carriage of Union Steel's cargo must be litigated in the carrier's forum. Defendants cite no authorities or principles of contract law in support of this position. However, this Court observes that the district court in *Bison Pulp v. M/V Pergamos,* 1996 AMC 2022 (S.D.N.Y.1995), did reach the result defendants desire.

■ In *Bison Pulp,* the court reasoned that if the parties had meant to limit the forum selection clause to disputes between the contracting parties, then they would have included limiting language. 1996 AMC at 2040, 1995 WL 880775. The court reasoned that the parties there must have intended the broad meaning for which defendants argue

---

9. In *Tradearbed,* Judge Rodriguez found that the submissions there "tended to show" that the Korean Commercial Code, although different from COGSA, the Harter Act and Hague Rules, provided the shipper there with the same protection as, or greater protection than, COGSA. 1997 AMC at 2843, 1997 WL 769525. In *Fireman's Fund Ins. Co.,* the Ninth Circuit found "uncontroverted evidence" that Korean law

would be at least as favorable as COGSA. 131 F.3d at 1340.

10. This Court does agree with defendants that Union Steel's negligence claim against Yukong is a claim arising under the bill of lading. Union Steel cannot avoid the forum selection clause by styling that claim a tort claim.

here because the narrower reading "could lead to an awkward and inefficient splitting of claims and their litigation in separate, widely dispersed fora." *Id.* at 2040–41, 1995 WL 880775. This reasoning puts the cart before the horse. Where two parties contract to litigate any dispute arising under their contract in a specified forum, this Court presumes that they are speaking only of disputes with each other in the absence of language about disputes with third parties. If additional contractual language is required, it is not limiting language but broadening language. In addition, to the extent that the existing language is ambiguous, it is to be construed against Yukong as drafter.

Of course this Court recognizes the complexity and undesirability of multiple-fora litigation. But such litigation is often a possibility, especially when international parties and transactions are involved. The harshness of multi-fora litigation might be mitigated by any preclusive effects of a judgment in one forum, and even by agreements between the parties to effectuate more efficient resolution of their disputes.

In conclusion, the only result of enforcing the forum selection clause will be dismissal of Union Steel's action against Yukong Line. Therefore, there is no likelihood that the carrier's COGSA liability will be reduced because a Korean court might not recognize Spruce Maritime and Sanko Marine as carriers.

### c. *Subrogation Rights*

Union Steel states that this case involves a right of subrogation on behalf of its cargo insurer, and notes that one court has refused to send a cargo case to Korea pursuant to a forum selection clause because a Korean court would not recognize the rights of subrogation and real party in interest. Without presuming to understand precisely how this issue relates to COGSA liability, this Court observes that the KCC does recognize the right of subrogation. (*See* J.H. Choi Dec. ¶ 33). The case cited by Union Steel, *Gibbs Int'l, Inc. v. Federal Ins. Co.,* 1997 AMC 2954 (D.S.C.1997), plainly spoke incorrectly on this point. Union Steel's subrogation argument is without merit.

### d. *COGSA In rem Action*

Union Steel has an *in rem* action against the M/V Sanko Spruce currently pending in the district court for the district of Oregon. Union Steel has filed a motion there to transfer the *in rem* action to this Court for consolidation. Union Steel argues that it will not be able to pursue an *in rem* action in Korea because, while Korean law does allow for the arrest of the vessel as security for a cargo damage claim, it does not recognize an *in rem* action against the vessel.

Section 3(8) of COGSA forbids any clause in a contract of carriage relieving "the carrier or the ship from liability." One court has recognized that a "plaintiff's inability under Korean law to bring an *in rem* action against the vessel, would appear to deprive plaintiff of one of the substantive rights expressly guaranteed by § 3(8)." *International Marine Underwriters CU v. M/V Kasif Kalkavan,* 97–3163(JSR) (S.D.N.Y. Jan. 7, 1998) (unpublished opinion). The Ninth Circuit has reached the opposite conclusion, reasoning that an *in rem* action is merely a means of enforcing COGSA liability. *Fireman's Fund Ins. v. M.V. DSR Atlantic,* 131 F.3d 1336, 1339–40 (9th Cir.1997).

Resolution of this issue is not required here. The only defendant entitled to enforce the forum selection clause is Yukong Line. There is no agreement requiring that Union Steel's disputes with the M/V Sanko Spruce be resolved in Korea. Thus, Union Steel's concern about not being able to pursue an *in rem* action in Korea is moot.

### e. *Other Aspects of the KCC as Compared to COGSA*

Union Steel offers additional ways in which the carrier's COGSA liability will be reduced if Korean law is applied: (1) the Korean WON is devalued and Union Steel will be prejudiced accordingly; (2) a carrier's liability is lessened under Korean law "because the carrier does not have to prove that certain defenses actually caused the damage"; (3) Korean law does not recognize deviation as a fundamental breach of the contract of carriage; and (4) "Korean courts apply outcome determinative procedural differences from U.S. courts."

Union Steel does not develop these points; it merely directs this Court's attention to its Korean law expert's declaration. This type of presentation hardly suffices to carry Union Steel's burden of persuasion. Moreover, defendants' expert—who is a Korean maritime lawyer—effectively rebuts these points. Defendants also have directed this Court's attention to a brief filed in another case involving similar claims in which defendants' counsel provided effective and convincing responses. (*See* Vengrow Dec., Ex. C). Accordingly, this Court rejects Union Steel's additional claims concerning how a carrier's COGSA liability will be reduced under Korean law.

### 2. *Harter Act Liability*

Union Steel contends that the forum selection clause should not be enforced because the carrier's liability under the Harter Act will not be recognized under Korean law.

The Harter Act, 46 U.S.C.App. §§ 190–196, preceded the Hague Rules of 1921, and the latter Rules were based in part on the Harter Act; the Harter Act was largely superseded by COGSA, which was passed in 1936. *Sun Oil Co. of Pa. v. M/T Carisle,* 771 F.2d 805, 809 (3d Cir.1985).

■ Under the Harter Act,

it is unlawful for the manager, agent, master, or owner of any vessel transporting merchandise or property between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery.... Any and all words or clauses of such import ... shall be null and void and of no effect.

46 U.S.C.App. § 190. Thus,

while COGSA defines a carrier's liability from the time when the goods are loaded on to the time when they are discharged from the ship, ... the Harter Act applies until the carrier *delivers* the cargo. The Harter Act generally imposes a non-waiva-ble duty of care upon the carrier during the post-discharge, pre-delivery period.

*English Elec. Valve Co. v. M/V Hoegh Mallard,* 814 F.2d 84, 87 (2d Cir.1987).

■ Union Steel asserts that discharging steel products which can be damaged by exposure to weather and failing to protect such products from the weather after discharge would constitute improper delivery under the Harter Act. This position appears to be reasonable, as the Harter Act imposes a duty on carriers to deliver the goods from wharf to wharf, to notify the consignee of the vessel's arrival, and to protect the cargo until the consignee has a reasonable opportunity to remove it unless these obligations are modified by local port law, custom or regulation. *Farrell Lines, Inc. v. Highlands Ins. Co.,* 696 F.2d 28, 29 (2d Cir.1982) (per curiam); *Allstate Ins. Co. v. Imparca Lines,* 646 F.2d 166, 168 (5th Cir. Unit B 1981); *Black Sea & Baltic General Ins. Co. v. S.S. Hellenic Destiny,* 575 F.Supp. 685, 687–88 (S.D.N.Y.1983).

■ Union Steel argues that the KCC does not have any provision corresponding to the Harter Act, and that under the KCC the carrier might not be liable for damage flowing from such an improper delivery. Therefore, argues Union Steel, the choice of Korean law operates as a clause limiting the carrier's liability in violation of the Harter Act. As support, Union Steel cites *Knott v. Botany Worsted Mills,* 179 U.S. 69, 21 S.Ct. 30, 45 L.Ed. 90 (1900), wherein the Supreme Court nullified a choice of law provision under the Harter Act because the chosen law would give effect to a bill of lading provision purporting to exempt the carrier from liability for damage to goods caused by the carrier's negligence in loading and stowing cargo.

There are problems with Union Steel's argument. First, the complaint alleges that the steel fence pipe was not in good order and condition when it was discharged,(complaint, ¶ 13), strongly suggesting that Union Steel intends to prove that the steel pipe was damaged sometime prior to its unloading from the M/V Sanko Spruce and not at some point in time between discharge and delivery. Second, Union Steel has not persuaded this Court that there is a likelihood that the KCC

would not hold the carrier liable for damage occurring between discharge and delivery. The KCC provides that "[t]he carrier shall be liable to pay for damages resulting from any loss of or damage to or delay in delivery of the goods unless he prove that he, his members of the crew or other … servants of the ship has not neglected to exercise due care in connection with the receipt, loading, storage, carriage, custody, *discharge and delivery* of the goods." KCC, Pt. I, Ch. 4, Art. 788 (emphasis added).

For these reasons, Union Steel's Harter Act argument against enforcing the forum selection clause is rejected.

### 3. *Ambiguity*

 Union Steel argues that the forum selection clause is unreasonable and should not be enforced because it is ambiguous as to what law will apply, which party is the carrier, and, derivatively, which forum is the proper forum. Assuming that ambiguity exists where Union Steel perceives it, this Court does not agree that a lack of clarity on these fronts renders the clause "unreasonable." Union Steel cites no authorities to support its argument. Granting that any ambiguities in the bills of lading are to be construed against Yukong Lines as drafter, this Court cannot discern how any construction of the forum selection clause could result in the United States District Court becoming a proper forum. A rule declaring that every ambiguity in a forum selection clause renders it unenforceable would wreak havoc. The objective must be to give effect to the parties' intentions. Yukong Lines and Union

Steel did not intend for their disputes to be resolved in this forum.[11]

### 4. *Korean Time-bar*

 Union Steel argues that if the forum selection clause is enforced, then it will be deprived of its day in court because its claims will be time-barred in a Korean court.[12]

Assuming that this statement is accurate, this Court does not agree with Union Steel that the Korean time-bar supports non-enforcement of the forum selection clause. The court in *Seven Seas Ins. Co. v. Danzas S.A.*, 1997 AMC 961, 1996 WL 895460 (S.D.Fla. 1996), considered and rejected this claim, reasoning that the analysis does not hinge on whether a clause is unreasonable in light of present circumstances created by plaintiff's failure to file in the correct forum. *Id.* at 962, 1996 WL 895460; *see also Great American Ins. Co. v. Kapitan Byankin*, 1996 AMC 2754, 2758 (N.D.Cal.1996). As the Second Circuit has noted, Union Steel's position, if accepted, "would create a large loophole for the party seeking to avoid enforcement of the forum selection clause. That party could simply postpone its cause of action until the statute of limitations has run in the chosen forum and then file its action in a more convenient forum." *New Moon Shipping Co., Ltd. v. Man B & W Diesel Ag*, 121 F.3d 24, 33 (2d Cir.1997). The forum selection clause will be enforced notwithstanding that Union Steel's action might be time-barred under Korean law.[13]

---

**11.** While it might be fundamentally unfair to enforce a clause where ambiguity has prejudiced a plaintiff endeavoring in good faith to comply, those are not the facts of this case.

**12.** The applicable KCC limitations period is one year. Although Union Steel discovered the damage to its cargo on November 27, 1996, it waited until November 26, 1997—one day before the running of the COGSA limitations period—to bring suit. It appears that at that time, Union Steel's counsel brought suit without having reviewed the forum selection clause, most likely because counsel had not been made aware of its existence by Union Steel.

**13.** In *Krol v. AAMCO Transmissions Inc.*, No. 91–4740, 1991 WL 276006 (E.D.Pa. Dec.19, 1991), the court concluded that a forum selection clause

was unenforceable because the plaintiff would face a time-bar. *Id.* at *2. The court relied exclusively on *Hodes v. S.N.C. Achille Lauro ed Altri–Gestione*, 858 F.2d 905 (3d Cir.1988), *cert. dismissed*, 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 (1989). In *Hodes*, the Third Circuit undertook a lengthy consideration of the reasonableness of enforcing the clause there. At the conclusion of its analysis the court "observe[d] that the appellants have stipulated to waive any statutory or contractual limitations on time of suit…." *Id.* at 916. The court concluded that foreign litigation would not deprive the plaintiffs of their day in court. *Hodes* announced no rule which this Court is bound to apply.

### 5. *Litigation in Multiple Fora*

 Forcing Union Steel to litigate its claim against Yukong Line in Korea will create multi-fora litigation. Its claims against Spruce Maritime, Sanko Marine and Trans–Ocean Maritime Services (the stevedore) will remain here. It's *in rem* action might be transferred here from the district court in Oregon. Trans Ocean has filed counterclaims against defendants, including Yukong, which properly are before this Court. Union Steel argues that under these circumstances, enforcement of the clause would be unreasonable because Union Steel effectively will be deprived of its day in court. As support, Union Steel cites the two-page opinion in *Xces, Inc. v. NYK Line North America Inc.*, 97–1149(WLD) (W.D.Wash. Nov. 19, 1997) (unpublished opinion), where the district judge adopted such an argument.

*Xces* is not persuasive. The result of accepting Union Steel's argument would be to allow plaintiffs to escape enforcement of forum selection clauses simply by adding defendants and claims. This result cannot be accepted. *See Friedman v. World Transp., Inc.*, 636 F.Supp. 685, 691 (N.D.Ill.1986). Therefore, this Court will enforce the clause despite the specter of multi-fora litigation.

### III. CONCLUSION

For the reasons set forth above, this Court will enforce the forum selection clause and will dismiss Union Steel's complaint against Yukong Line Limited. This Court will deny defendants' motion to dismiss the complaint against Spruce Maritime and Sanko Marine. An appropriate order will enter on an even date herewith.

### *ORDER DISMISSING COMPLAINT AGAINST YUKONG LINE LIMITED*

This matter having come before this Court on motion of defendants Yukong Line Limited ("Yukong Line"), Spruce Maritime S.A. ("Spruce Maritime"), and The Sanko Marine Co., Ltd. ("Sanko Marine") for dismissal of plaintiff Union Steel America Co.'s ("Union Steel") complaint; this Court having reviewed the parties' briefs and submissions;

and for the reasons set forth in an opinion issued on an even date herewith,

**IT IS** on this 20th day of July, 1998,

**ORDERED THAT:**

1. Defendants motion as to the complaint against Yukong Line is **GRANTED** and Union Steel's action against Yukong Line is **DISMISSED**; and

2. Defendants' motion as to the complaint against Sanko Marine and Spruce Maritime is **DENIED**.