256 N.J. Super. 58 (1992)
606 A.2d 407
WILFRED MACDONALD INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
CUSHMAN INC., DEFENDANT-APPELLANT, AND STEVEN WILLAND, INC., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued April 14, 1992.
Decided May 4, 1992.
*59 Before Judges MICHELS, HAVEY and CONLEY.
B. John Pendleton, Jr., argued the cause for appellant (McCarter & English, attorneys; Richard M. Eittreim, of counsel; Richard M. Eittreim and B. John Pendleton, on the briefs).
Scott Sheldon, argued the cause for respondent (Carpenter, Bennett & Morrissey, attorneys; Francis X. Ferrara and Scott Sheldon of counsel; Stephen F. Payerle and Barry Gerstein, on the brief).
The opinion of the court was delivered by CONLEY, J.S.C. (temporarily assigned).
By leave granted defendant Cushman Inc. (Cushman) appeals a preliminary injunction restraining it from terminating a portion of its "Master Dealership Agreement" with plaintiff Wilfred MacDonald Inc. (MacDonald) and denying its motion to dismiss MacDonald's complaint based upon a forum selection clause in the agreement. We reverse the denial of the motion to dismiss and thus need not reach issues relating to the grant of injunctive relief.
MacDonald is a retailer of turf maintenance equipment and supplies, selling to golf clubs, individuals, and governmental agencies. Incorporated in 1972, MacDonald's gross sales revenue for 1990 was over 5.5 million dollars. It began selling Cushman products in 1975 pursuant to a dealership agreement. *60 The agreement was renewed annually. In addition to Cushman products, MacDonald sells products of a number of other manufacturers including Jacobsen, Smitho, Giant Vac, Mitsubishi, Howard and National. Since 1963 Jacobsen products have been the primary line MacDonald has sold. In 1990 Jacobsen sales accounted for approximately 35% of MacDonald's gross sales; Cushman sales accounted for approximately 21.5%, and other product lines individually accounted for substantially less. Jacobsen is a Cushman competitor and has product lines similar to those that would be affected by the partial termination,[1] albeit not identical.
Following notification from Cushman that it intended to terminate part of MacDonald's Dealership Agreement, MacDonald filed an order to show cause and verified complaint on August 15, 1991 seeking temporary injunctive relief. The complaint alleges a violation of the Franchise Practices Act, N.J.S.A. 56:10-1 et seq., as well as bad faith on the part of Cushman. A third count alleges tortious interference with contractual rights and seeks injunctive relief against defendant Steven Willand Inc. (Willand). Cushman has entered into a Dealership Agreement with Willand permitting it to sell the "Cushman Turf" and "Cushman Front Line" products.
Although the complaint was filed in the New Jersey Superior Court, the Dealership Agreement contains in bold print a forum selection clause which states in part:
ANY CAUSE OF ACTION, CLAIM, SUIT OR DEMAND BY DEALER, ALLEGEDLY ARISING FROM OR RELATED TO THE TERMS OF THIS AGREEMENT OR THE RELATIONSHIP OF THE PARTIES SHALL BE *61 BROUGHT IN THE FEDERAL DISTRICT COURT FOR THE DISTRICT OF NEBRASKA IN LINCOLN, NEBRASKA, OR IN THE DISTRICT COURT FOR THIRD DISTRICT OF THE STATE OF NEBRASKA. BOTH PARTIES HERETO IRREVOCABLY ADMIT THEMSELVES TO, AND CONSENT TO, THE JURISDICTION OF EITHER OR BOTH OF SAID COURTS.
Since inception of its relationship with Cushman, MacDonald has executed a Dealership Agreement yearly. The forum selection clause has been in each of the agreements and appears immediately above the signature line. Indeed, MacDonald's president, James Pelrine admitted he read and understood the forum selection clause before signing the agreement. Although he said he had no choice but to sign the agreement, he admitted never questioning or complaining about it or in any way attempting to negotiate something different. Cushman's motion to dismiss was premised upon the forum selection clause.
Application of the Franchise Practices Act to the Master Agreement is hotly contested by Cushman. It argues MacDonald's total sales of Cushman products was 21.5% of its overall sales, but only 18% was represented by sales of the two lines being terminated and thus the 20% threshold of the Act was not met. See N.J.S.A. 56:10-4. Cushman also contends its relationship with MacDonald does not constitute a "franchise" as defined by the Act. N.J.S.A. 56:10-3(a).[2] In this respect, Cushman notes the provision in the agreement prohibiting MacDonald from using the Cushman name as its own, the fact Cushman does not warrant MacDonald service on its products, the fact MacDonald does not display Cushman signs outside its place of business but rather uses its own name and the fact that while Cushman signs and logos are displayed within the store, so too are those of the other manufacturers whose products MacDonald sells, most predominantly Jacobsen's. *62 Cushman argues these facts demonstrate MacDonald does not have a "license" from Cushman to use its trade name, trade mark or service mark. Finally, it argues MacDonald has not shown a "community of interest" with Cushman, pointing to the minimal capital investment in Cushman, that Cushman would repurchase all of MacDonald's inventory, that MacDonald sells other manufacturers' products, the largest of which is a Cushman competitor, and that MacDonald retains control over its sales staff, operations, method of selling and advertising. See Neptune T.V. & Appliance v. Litton Microwave, 190 N.J. Super. 153, 462 A.2d 595 (App.Div. 1983). See also New Jersey American v. Allied Corp., 875 F.2d 58 (3rd Cir.1989).
Although recognizing these facts raised substantial questions as to the applicability of the Act and that he could not conclude it was applicable, the trial judge nonetheless restrained the partial termination as "nothing more than a virtually cost-free maintenance of the status quo." He denied the motion to dismiss. In doing so he concluded there was no evidence of fraud or overreaching and could not say the Act was applicable. Nonetheless he found a strong State interest in providing a New Jersey forum for the Act's enforcement and further concluded a Nebraska forum would present MacDonald with difficulties in production of non-party witnesses. Finally he thought a foreign forum might not have sufficient jurisdiction over defendant Willand. We disagree.
At the outset, we think it important to point out that it is only the proper forum that is at issue before us. The Master Agreement also contains a choice-of-law clause which we have no occasion to consider. We note, however, that Cushman appears to concede that if the Act is applicable, MacDonald will be able to enforce it in the Nebraska forum notwithstanding a contrary choice-of-law provision in the agreement; for, as it says in its reply brief:
Unlike a choice of law clause, see, e.g., Winer Motors Inc. v. Jaguar Rover Triumph, Inc., 208 N.J. Super. 666 [506 A.2d 817] (App.Div. 1986), which if *63 enforced might deny a franchisee the benefits of the Act, a forum selection clause has no effect on the Act's application. If the Act applies, MacDonald may enforce it, irrespective of venue.
What we are called upon here to resolve is not whose law should apply, but in what forum should the law be applied.
Forum selection provisions have long been enforced in New Jersey. Mayer v. Roche, 77 N.J.L. 681, 75 A. 235 (E. & A. 1909). See Leavitt v. Leavitt, 223 N.J. Super. 80, 82, 538 A.2d 365 (App.Div. 1987), certif. denied, 110 N.J. 304, 540 A.2d 1284 (1988); Fairfield Lease v. Liberty Temple, 221 N.J. Super. 647, 652, 535 A.2d 563 (Law Div. 1987). Cf. Air Economy Corp. v. Aero-Flow Dynamics, 122 N.J. Super. 456, 457-58, 300 A.2d 856 (App.Div. 1973). Disfavored in some jurisdictions, the Supreme Court of the United States views them as "prima facie valid and [which] should be enforced unless enforcement is shown by the resisting party to be `unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513, 520-21 (1972). See Carnival Cruise Lines v. Shute, ___ U.S. ___, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). New Jersey holds "substantially the same" on the validity of forum clauses. Coastal Steel v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202 (3rd Cir.), cert. denied, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983);[3]In re Diaz Contracting, 817 F.2d 1047, 1050 fn. 5 (3rd Cir.1987). See Fairfield Lease v. Liberty Temple, 221 N.J. Super. at 652, 535 A.2d 563. Such clauses will be enforced unless the party objecting thereto demonstrates (1) the clause is a result of fraud or overweening bargaining power, Bremen, 407 U.S. at 12, 15, 92 S.Ct. at 1914, 1916, 32 L.Ed.2d at 522, 523, or (2) enforcement in a foreign forum would violate strong public policy of the local forum, id. 407 U.S. at 15, 92 S.Ct. at 1916, 32 *64 L.Ed.2d at 523, or (3) enforcement would be seriously inconvenient for the trial, id. 407 U.S. at 16, 92 S.Ct. at 1916, 32 L.Ed.2d at 524.
As we previously noted, the trial judge did not find fraud or overreaching in connection with the forum clause. Indeed, none was shown. Although MacDonald says the Master Agreement, being a "boiler plate" Cushman document, was not open to negotiations and, in fact, was a "contract of adhesion," we think it not without significance that MacDonald, obviously having dealt with numerous manufacturers and other agreements over the years of its apparently successful business, is not unsophisticated. We note, moreover, as to leverage MacDonald may have had to negotiate a different forum clause, at least as of the date the Master Agreement was executed and prior to Cushman's decision to terminate, MacDonald was a highly successful dealer for Cushman and was, at the same time, selling products of competitors. It is, moreover, further significant we think that this was not an agreement entered into by an unaware, unsuspecting dealer. Rather, MacDonald's president read the forum clause and understood it, yet neither discussed it nor questioned it at that time. We see nothing in the relationship between Cushman and MacDonald, thus, at the time of the Master Agreement that would provide a basis for a finding of "overweening" bargaining power sufficient to require nonenforcement of the forum clause.[4]
*65 Neither do we find the difficulty MacDonald might have in producing its witnesses in Nebraska to be the type of inconvenience that would warrant nonenforcement. As Bremen emphasizes, it is not inconvenience per se to the parties, but whether enforcement of the forum selection is "seriously inconvenient for the trial," or as further characterized in Bremen, whether "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." 407 U.S. at 18, 92 S.Ct. at 1917, 32 L.Ed.2d at 525. The most MacDonald has asserted here is that proceeding in Nebraska would make it difficult to obtain the presence of nonparty witnesses. However, it does not indicate whether such witnesses would not voluntarily testify or whether other less burdensome procedures could not be employed to obtain such testimony, such as de bene esse depositions. Finally, as Cushman points out in its brief, the contacts between it and Willand in connection with their master agreement should be sufficient to provide jurisdiction over Willand by a Nebraska court. Indeed, the agreement with Willand contains a similar forum selection clause.
We consider, further, the contention enforcement of a forum selection clause resulting in application of the Act by another state court is contrary to public policy. Underlying this notion is the premise that only New Jersey courts are equipped to properly interpret and apply the Act and that to allow other state courts to do so would result in diverse and inconsistent applications. In this respect, we think the reflection of the Supreme Court in Bremen upon this notion is helpful:

*66 The argument that such clauses are improper because they tend to "oust" a court of jurisdiction is hardly more than a vestigial legal fiction. It appears to rest at core on historical judicial resistance to any attempt to reduce the power and business of a particular court and has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets. It reflects something of a provincial attitude regarding the fairness of other tribunals.
[407 U.S. at 12, 92 S.Ct. at 1914, 32 L.Ed.2d at 521]. Just as can our courts fairly and competently analyze and apply other states' laws, see e.g., Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 208 N.J. Super. 666, 672-73, 506 A.2d 817 (App. Div. 1986) (applying Connecticut law to New Jersey franchisor and Connecticut franchisee), we perceive no reason why the federal district court of Nebraska or Nebraska state courts could not do the same. Although the concepts of "license" and "community of interest" may be somewhat broad and undefined in the Act, there exists New Jersey precedent to which a foreign court may look. See Neptune T.V. & Appliance v. Litton Microwave, 190 N.J. Super. at 153, 462 A.2d 595. See also New Jersey American v. Allied Corp., 875 F.2d 58 (3rd Cir.1989). Moreover, we note Nebraska has enacted a Franchise Practices Act not unlike ours. Neb. Rev. Stat. § 87-401 et. seq. (1987 & Supp. 1990, 1991).
We are, further, not persuaded that N.J.S.A. 56:10-10, authorizing an action under the Act to be brought in the "Superior Court of the State of New Jersey," expresses an intent that such actions must only be brought in the New Jersey courts. That section does not preclude enforcement in a foreign forum, unlike N.J.S.A. 56:10-7.3a(2) which expressly precludes a foreign forum selection clause as to motor vehicle franchises, and it is no different than numerous other statutory penalty or enforcement provisions providing for jurisdiction in particular courts. See e.g. N.J.S.A. 56:3-23 (enforcement of bottle law); N.J.S.A. 56:3-41 (enforcement of tradename, mark or device on laundry or toilet articles); N.J.S.A. 56:3-47 (enforcement of unlawful use of milk or cream cans); N.J.S.A. 56:8-2.21 (enforcement of refund policy disclosure act); N.J.S.A. 56:8-8 *67 (injunctive relief for consumer fraud act violations); N.J.S.A. 56:8-14 (penalty enforcement for consumer fraud act violations). We do not think the Legislature intended to prohibit otherwise reasonable forum selection clauses by enactment of penalty or enforcement provisions. When it expressly intends to do so, it has. See N.J.S.A. 56:10-7.3a(2).
Although we recognize a different result was reached with respect to a forum selection clause involving the Wisconsin Fair Dealership Law in Cutter v. Scott & Fetzer Co., 510 F. Supp. 905 (E.D.Wis. 1981), we do not find that case controlling. Not only was it premised upon the what the Supreme Court in Bremen characterized as a "provincial" view that Wisconsin courts are best able to apply Wisconsin law, but the federal district judge cautioned "I do not presume to hold that a clause of this type will never be upheld when contained in a contract of this nature, nor do I hold that a claim based on the Fair Dealership Law can only be litigated in a Wisconsin court." 510 F. Supp. at 909. See Rini Wine Co. v. Guild Wineries and Distilleries, 604 F. Supp. at 1058. See also Alpert v. Alphagraphics Franchising, Inc., 731 F. Supp. 685 (D.N.J. 1990) (forum clause requiring binding arbitration in Arizona enforced notwithstanding claims that the New Jersey Franchise Practices Act applied).
We, thus, conclude the trial judge erred in denying the motion to dismiss. Since the complaint should be dismissed on the basis of the forum selection clause, we need not and do not address any issues raised by the grant of injunctive relief. Reversed and remanded for the entry of an order dismissing the complaint.
NOTES
[1] The product lines Cushman seeks to terminate are the "Cushman Turf" and "Cushman Front Line." The latter is a line of "utility-type tractors primarily designed for cutting grass. The former includes a variety of 3 and 4 wheel vehicles called "trucksters," used for carrying passengers or equipment. MacDonald asserts that Cushman's trucksters are unique in that they can accommodate various turf-care attachments. However, MacDonald admits that it carries Jacobsen products used for the same purposes as "Front Line" products and also carries a Jacobsen "truckster".
[2] As defined in N.J.S.A. 56:10-3(a) franchise is a written agreement granting "a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services..."
[3] In addition to upholding a forum selection clause, the court in Coastal Steel also held orders declining to enforce such clauses are immediately appealable. The Supreme Court reached a different conclusion in Lauro Lines v. Chasser, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989). However, its determination that forum selection clauses are enforceable remains valid.
[4] MacDonald contends it had no choice but to sign the form contract or lose its lines and asserts there was "no room for negotiation and voluntary agreement," and that having been a Cushman dealer since 1975 its "15 year investment was on the line...." In doing so it relies on Shell Oil Co. v. Marinello, 63 N.J. 402, 408-09, 307 A.2d 598 (1973), cert. denied, 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1974). See also Westfield Centre Service, Inc. v. Cities Service Oil Co., 86 N.J. 453, 470, 432 A.2d 48 (1981). Both of these cases focus upon the purpose of the Act as protecting franchisees, pointing out that frequently the relationship between franchisor and franchisee is of one-sided bargaining power. In both cases, the franchise was a gas station the sole product of which was that of the franchisor. The franchisees' entire financial stability, thus, was dependent upon the ability to continue selling the franchisor's product. The relationship here between MacDonald and Cushman is not so dependent. MacDonald does not rely upon Cushman for its sole business. It has many other products to sell; indeed Cushman's main competitor, Jacobsen, is MacDonald's primary product. We, thus, do not agree that the fact the forum clause was signed knowingly "misses the point." See Carnival Cruise Lines v. Shute, ___ U.S. ___, ___, 111 S.Ct. 1522, 1527, 113 L.Ed.2d 622, 631-32 (1991); Rini Wine Co. v. Guild Wineries and Distilleries, 604 F. Supp. 1055, 1058 (N.D. Ohio, 1985).