**CADAPULT GRAPHIC SYSTEMS, INC., Plaintiff,**

v.

**TEKTRONIX, INC., Defendant.**

**No. Civ.A.99–3779(AMW).**

United States District Court, D. New Jersey.

May 18, 2000.

Joseph J. Fleishman, Norris, McLaughlin & Marcus, A Professional Corporation, Somerville, NJ, for plaintiff.

H. John Schank, II, Amy E. Robinson, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, A Professional Corporation, Newark, NJ, for defendant.

## OPINION

WOLIN, District Judge.

This matter comes before the Court on defendant's motion to (1) dismiss pursuant

to Rule 12 of the Federal Rules of Civil Procedure, or in the alternative, (2) transfer venue pursuant to 28 U.S.C. § 1404(a). Defendant, Tektronix, Inc. ("Tektronix"), argues that the District of New Jersey is an improper forum to hear this case. In making this argument, defendant points to a forum-selection clause in an agreement signed by the parties which directs any litigation to be brought in Oregon. Plaintiff, Cadapult Graphic Systems, Inc. ("Cadapult"), opposes the motion. Cadapult maintains that the forum-selection clause is invalid because it is contained in a franchise agreement, thus, making it presumptively invalid pursuant to New Jersey law. *See Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 146 N.J. 176, 680 A.2d 618 (1996). The matter has been decided on the papers, pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court will grant defendant's motion to transfer venue to the District of Oregon.

## BACKGROUND

Plaintiff, Cadapult, is a Delaware corporation with its principal place of business in New Jersey. Cadapult is in the business of reselling digital color printers and supplies and providing parts and service for such printers. Defendant, Tektronix, is an Oregon corporation with its principal place of business in Oregon. Tektronix is in the business of manufacturing and selling digital color printers and supplies, including a patented form of solid ink for color printers.

In October 1988, Cadapult entered into an agreement with Tektronix, entitled "Value Added Dealer Agreement," pursuant to which Cadapult could purchase Tektronix products at a discounted price for resale and could use Tektronix's trademark and advertising materials in connection with the resale of Tektronix products. Under the terms of this agreement, Tektronix appointed Cadapult to be an "authorized value added dealer." In August 1991, the parties entered into a subsequent

"Value Added Dealer Agreement" (the "Agreement"). Cadapult remains a "value added dealer" pursuant to the August 1991 Agreement.

Both agreements contain a forum-selection clause. The clause states:

> *Governing Law.* This Agreement and the rights of the parties hereunder shall be governed by the laws of the State of Oregon. Any litigation between the parties shall be commenced and prosecuted in the state and federal courts in Oregon.

Cadapult contends that this clause was non-negotiable. Specifically, Cadapult asserts that, at the time of contracting, it was a fledgling company and that it "feared" negotiations may jeopardize its status as a "value added dealer."

Tektronix, on the other hand, maintains that Cadapult "had every opportunity to negotiate" this clause. Indeed, Tektronix points to an established procedure which it follows in negotiating dealer's concerns. Moreover, defendant asserts that they never advised Cadapult that this clause was non-negotiable, nor did Cadapult object to the inclusion of this clause. Further, they point out that, in 1991, Cadapult was an established business with three years experience.

In August 1999, Cadapult filed a multi-count complaint in this Court. Notably, the complaint alleged no violation of the "Value Added Dealer Agreement." Similarly, it did not allege that Tektronix's practices pursuant to this Agreement violated the New Jersey Franchise Practices Act ("Franchise Act"). Instead, Cadapult's complaint alleged, *inter alia,* (1) Franchise Act violations of a different agreement, entitled the "Premier Plus Reseller Program," (2) breach of contract, and (3) various federal and state statutory violations.

As to the alleged Franchise Act violations relating to the "Premier Plus Reseller Program," the Court, in a prior opinion, has already found those allegations sub-

stantially devoid of merit. *See Cadapult Graphic Systems, Inc. v. Tektronix, Inc.*, Civ. No. 99–3779, Memorandum Op., Aug. 25, 1999. At the outset of this action Cadapult moved, based on the alleged Franchise Act claims, for a temporary restraining order and a preliminary injunction. Cadapult maintained that defendant violated the Franchise Act because defendant discontinued Cadapult's participation in the "Premier Plus Reseller Program." The Court denied Cadapult's motion, holding that Cadapult would not likely succeed on the merits. *See id.* at 7–9. The court did so because the "Premier Plus Reseller Program" did not constitute a franchise agreement within the meaning of the Franchise Act. Specifically, the Court found that Cadapult failed to demonstrate a "written agreement," a "license to Use Tektronix's tradename or trademark," and a "community of interest" between Cadapult and Tektronix. *See id.; see also* N.J.S.A. § 56:10–3(a) (defining a "franchise" as a "written agreement in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services . . . .").

After the Court denied the preliminary injunction, Tektronix brought the instant motion. In this motion, Tektronix seeks either dismissal or transfer of this case pursuant to the above-quoted forum-selection clause. Cadapult, however, maintains that the forum-selection clause is invalid under the New Jersey Supreme Court's decision, *Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 146 N.J. 176, 680 A.2d 618 (1996).[1] For the reasons discussed immediately below, the Court will grant the motion to transfer, finding that the facts of this case do not implicate *Kubis*.

## DISCUSSION

### I. Transfer

■ The present motion hinges around the Agreement's forum-selection clause. "In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir.1995); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27–32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

Here, in a motion to transfer venue, the applicable federal law is 28 U.S.C. § 1404(a).[2] *See Stewart Org.*, 487 U.S. at

---

1. Cadapult does not dispute the scope of the forum-selection clause.

2. Plaintiff argues that the New Jersey Supreme Court decision, *Kubis*, should be given controlling weight. As noted above, however, state law is not dispositive; instead, a state's public policy is but one factor to consider, albeit an important factor, in a section 1404 analysis. *See Stewart Org.*, 487 U.S. at 28–32, 108 S.Ct. 2239 (finding that a district court, in analyzing a section 1404(a) motion, should not consider as dispositive a state law policy disfavoring forum-selection clause).

 While the Court notes that some commentators disagree with applying federal law in this context due to principles articulated in *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (i.e., forum shopping), *see* Editorial, *Erie Run Amok*, New Jersey Lawyer, May 8, 2000, at 6, both the Supreme Court and the Third Circuit have firmly held that "the effect to be given a contractual forum selection clause in diversity cases is

determined by federal not state law." *Jumara*, 55 F.3d at 877; *see also Stewart Org.*, 487 U.S. at 27–32, 108 S.Ct. 2239. Indeed, in *Stewart Organization*, the Supreme Court applied section 1404(a) in giving effect to a forum-selection clause despite the forum state's "categorical policy disfavoring forum-selection clauses." *Stewart Org.*, 487 U.S. at 30, 108 S.Ct. 2239.

 Federal law applies, the Third Circuit reasoned, because "questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature." *Jumara*, 55 F.3d at 877 (quoting *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir.1990)).

 Such an analysis, however, does not ignore state policies. Although the courts must apply federal law, "state policies should be weighed in the balance." *Id.* at 33 (Kennedy, J., concurring).

 In any event, no *Erie* concern is present in this case. Indeed, the facts of this case do not

28–29, 108 S.Ct. 2239; *Jumara*, 55 F.3d at 877–78. Thus, federal courts must view a forum-selection clause within the parameters of section 1404 and other related federal laws. *See Stewart Org.*, 487 U.S. at 28–29, 108 S.Ct. 2239; *Jumara*, 55 F.3d at 877–78.

Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

 The decision whether to transfer falls in the sound discretion of the trial court. *See Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir. 1989); *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F.Supp.2d 465, 474 (D.N.J.1998); *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F.Supp.2d 317, 320 (D.N.J.1998). In exercising this discretion, the Court must consider certain factors enunciated by the Supreme Court and further developed by the Third Circuit. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Jumara*, 55 F.3d at 879–80. These factors fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice. *See Jumara*, 55 F.3d at 879–80.

In *Jumara*, the Third Circuit enumerated both private and public interests protected by section 1404(a). Private interests include: (1) the "plaintiff's forum preference," (2) "the defendant's preference," (3) "whether the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable

for trial in one of the fora," and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879 (citations omitted).

Public interests include: (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) "the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80.

Within this framework, courts should place great weight on valid forum-selection clauses. While a valid forum-selection clause is not dispositive, "it is entitled to substantial consideration." *Id.* at 880.

 Cadapult argues that the instant forum-selection clause is invalid and, thus, deserves no consideration. In this Circuit, however, "in accord with the dictates of the Supreme Court, forum selection clauses are presumptively valid." *Reynolds Publishers, Inc. v. Graphics Fin. Group, Ltd.*, 938 F.Supp. 256, 263 (D.N.J.1996) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir.1983), *overruled on other ground, Lauro Lines v. Chasser*, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989)); *see also Union Steel America Co. v. M/V Sanko Spruce*, 14 F.Supp.2d 682, 686 (D.N.J. 1998). Accordingly, courts will respect such clauses unless the resisting party makes a "strong showing" that the clause is "unreasonable." *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (finding that forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting par-

---

implicate the New Jersey state policies enunciated in *Kubis*. As the Court explores below, the rule of *Kubis* applies to valid Franchise Act claims, not claims outside of the Franchise Act. Here, plaintiff did not assert a valid

Franchise Act claim. Thus, even if this Court followed state law in giving effect to the forum-selection clause, it would reach the same conclusion.

ty to be 'unreasonable' under the circumstances"); *Reynolds Publishers, Inc.*, 938 F.Supp. at 263 (citing *Bremen*, 407 U.S. at 10, 92 S.Ct. 1907). Such a clause is "unreasonable" only if

> the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

*Coastal Steel Corp.*, 709 F.2d 190 at 202; *Union Steel America Co.*, 14 F.Supp.2d at 686.

Cadapult argues that this clause is invalid because (1) it violates New Jersey public policy and (2) it is the result of overreaching. Both arguments are unavailing.

## A. New Jersey Public Policy—The *Kubis* Decision

■ Primarily, Cadapult argues that the forum-selection clause is invalid because its enforcement would violate the holding of *Kubis*, thus transgressing a strong public policy of New Jersey.[3] In *Kubis*, the plaintiff, a franchisee, brought a claim in New Jersey state court, alleging a violation of the Franchise Act. *See Kubis*, 146 N.J. at 180, 680 A.2d 618. The alleged Franchise Act violation stemmed from the franchisor's purported wrongful termination of the parties' "Value Added Dealer Agreement"—a franchise agreement.[4] *See id.* at 179–81, 680 A.2d 618. Although the agreement contained a forum-selection clause, the New Jersey Supreme Court refused to enforce it on public policy

grounds. *See id.* at 192–97, 680 A.2d 618. The *Kubis* court held that, in Franchise Act cases,

> [forum-selection] clauses are presumptively invalid because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the Act.

*Kubis*, 146 N.J. at 193, 680 A.2d 618.

After substantial consideration, this Court finds that the public policy enunciated in *Kubis* is not implicated here. Notwithstanding its language concerning uneven bargaining positions, the Court must read *Kubis*'s holding as an organic whole. Under this reading, the Court finds that *Kubis* only applies where, unlike in the instant case, a plaintiff asserts a valid claim under the Franchise Act. Indeed, in articulating its public policy rationale, the New Jersey Supreme Court placed particular emphasis upon violations of the Franchise Act. The court explained:

> . . . a forum-selection clause can materially diminish the rights *guaranteed by the Franchise Act* because the franchisee must assert *those rights* in an unfamiliar and distant forum, with an out-of-state counsel, and bear the added expense of litigation the franchisor's designated forum . . . .
>
> In such an event, the inevitable result would be to limit severely the availability of New Jersey courts as a forum for the enforcement of franchisee's *claims under the Act*, a result the legislature assuredly would find intolerable . . . .

---

**3.** As noted above, Cadapult incorrectly argues that *Kubis* should be granted controlling weight. To reiterate, in a diversity case, federal law determines the effect given to a forum-selection clause. While the forum's public policy deserves substantial weight, it is not dispositive. *See Jumara*, 55 F.3d at 877. In any event, New Jersey public policy, as articulated in *Kubis*, is not implicated here. *See infra*.

**4.** The *Kubis* court assumed *arguendo* that the agreement containing the forum-selection clause constituted a franchise agreement. This Court, like the New Jersey Supreme Court, will assume the "Value Added Dealer Agreement" in the instant case constitutes a franchise agreement.

The added expense, inconvenience, unfamiliarity of litigating *claims under the Act* in a distant forum could, for some marginally financed franchisees, result in the abandonment of meritorious claims that could have been successfully litigated in a New Jersey court. Although the legislature expressly has prohibited the use of forum-selection clauses only in motor-vehicle agreements, we entertain little doubt that the legislature would prefer to extend that prohibition to other franchisees rather than to permit forum-selection clauses to thwart the vindication of franchisees' *rights under the Act.*

*Kubis,* 146 N.J. at 194–96, 680 A.2d 618 (emphasis added). The *Kubis* court further noted that its holding applied "[p]articularly in the context of a claim for wrongful termination" of a franchise agreement—a specific violation of the Franchise Act.

The meaning of this quoted language is plainly evident. The New Jersey Supreme Court did not intend to extend *Kubis's* protection to non-Franchise Act cases. Indeed, *Kubis* did not envision a situation where the purported franchisee failed to assert a valid Franchise Act claim. Rather, the *Kubis* court presumed such forum-selection clauses invalid only where franchisees seek "swift and effective judicial relief against franchisors that *violate the Act,*" *id.* at 193, 680 A.2d 618, and in particular, those cases where franchisors "violate the Act" by wrongfully terminating a franchise agreement. *Id.* Thus, without question, *Kubis* does not extend to the facts of this case.

Indeed, in the instant case, unlike *Kubis,* plaintiff has not alleged that defendant violated the Franchise Act, vis à vis a wrongful termination of the "Value Added Dealer Agreement"—the agreement which contained the forum-selection clause. *See id.* at 194, 680 A.2d 618 (noting that the public policy rationale behind *Kubis* applies "[p]articularly in the context of a claim for wrongful termination [of a franchise agreement]"). Moreover, unlike *Kubis,* plaintiff has failed to assert any valid Franchise Act violation.[5] As a result, *Kubis's* concern of enforcing Franchise Act claims has no application in this case.

Such a rule is entirely consistent with New Jersey public policy. Indeed, outside of Franchise Act cases, New Jersey courts routinely find forum-selection clauses *prima facie* valid and enforceable. *See Caspi v. Microsoft Network, L.L.C.,* 323 N.J.Super. 118, 123, 732 A.2d 528 (App.Div.1999); *McNeill v. Zoref,* 297 N.J.Super. 213, 219, 687 A.2d 1052 (App.Div.1997); *Wilfred MacDonald, Inc. v. Cushman, Inc.,* 256 N.J.Super. 58, 63, 606 A.2d 407 (App.Div.), *certif. denied,* 130 N.J. 17, 611 A.2d 655 (1992). In fact, New Jersey's treatment of forum selection clauses substantially mirrors the favorable treatment espoused in federal courts. *See McNeill,* 297 N.J.Super. at 219, 687 A.2d 1052; *Wilfred MacDonald,* 256 N.J.Super. at 63, 606 A.2d 407. *Kubis* merely created an exception to New Jersey's general public policy of upholding the validity of such clauses. *See Caspi,* 323 N.J.Super. at 123, 732 A.2d 528. Thus, to extend *Kubis* outside the realm of Franchise Act cases makes little sense. The Court refrains from doing so.

Simply because this purported "franchise agreement" contains a forum-selection clause is insufficient, in itself, to void the clause. To be found invalid under *Kubis,* the clause must run counter to New Jersey public policy. The facts of this case do not implicate the substantial policy con-

5. As noted above, while Cadapult alleged a violation of the Franchise Act in relation to the "Premier Plus Reseller Agreement," the Court rejected this allegation because it was substantially devoid of merit.

In accord with the Court's prior opinion, the Court again deems plaintiff's Franchise Act claims to be devoid of merit. While the Court is inclined to dismiss Cadapult's Franchise Act claims, it will refrain from doing so. Because this case will be transferred to our sister court in Oregon, the Court believes that the Oregon court should finally adjudicate those claims.

cern articulated by the New Jersey Supreme Court—"providing swift and effective judicial relief [in New Jersey courts] against franchisors *that violate the Act.*" *Kubis,* 146 N.J. at 193, 680 A.2d 618 (emphasis added). Accordingly, the enforcement of the instant forum-selection clause does not run counter to the forum's public policy. The Court, thus, is unwilling to invalidate the clause on this ground.

### B. Overreaching

■ Cadapult also argues, apart from *Kubis,* that the clause is invalid due to the parties' uneven bargaining positions. Again, the Court disagrees.

Given the presumption in favor of enforcement, the record inadequately details circumstances that would warrant rejection of the clause. *See Foster v. Chesapeake Ins. Co.,* 933 F.2d 1207, 1219 (3d Cir.1991) (finding that forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances" (quoting *Bremen,* 407 U.S. at 10, 92 S.Ct. 1907)); *Caspi,* 323 N.J.Super. at 122–23, 732 A.2d 528 (finding that forum-selection clauses are prima facie valid and not contrary to public policy).

Cadapult argues that "Tektronix made clear that it would not consider changes to its pre-printed agreement." (Pl.Opp.Br. at 27–28). The record does not support such an assertion. Rather, the record merely suggests that Cadapult "feared" negotiating with Tektronix. (Levin Decl. ¶ 18). Certainly, such a "fear" does not establish that Tektronix would never consider such a change, nor does it suggest overweening power. *See Danka Funding,* 21 F.Supp.2d at 471 ("Defendant's claim that it thought the lease-form was non-negotiable, while admitting that it had failed to *attempt* to negotiate any portion of the printed terms ... is simply inadequate."). To the contrary, Tektronix has put forward evidence that it had a procedure in which it would negotiate proposed changes. (Rivera Certif. ¶¶ 3–4). Cadapult never proposed such a change. (*Id.*) "That there may not have been actual negotiations over the clause does not affect its validity." *Foster,* 933 F.2d at 1219 (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 590–93, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)).

Moreover, the Court notes that at the time of the 1991 Agreement, Cadapult was not as feeble as it asserts. Indeed, the record reflects that Cadapult was a growing and moderately successful company, not a company susceptible to every whim of its suppliers.

Accordingly, plaintiff has failed to sustain its burden of demonstrating an overweening bargaining position and the invalidity of the forum-selection clause. As a result, the Court must engage in a section 1404 analysis giving the clause "substantial consideration." *See Jumara,* 55 F.3d at 880.

### C. Section 1404 factors

■ In an ordinary case, "the burden of establishing the need for transfer ... rests with the movant." *Jumara,* 55 F.3d at 879 (citation omitted). But "[w]here the forum selection clause is valid, the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." *Id.* at 880. Hence, the burden rests with Cadapult.

#### 1. Private Factors

In most cases, the plaintiff's forum choice is "a paramount consideration in any determination of a transfer request." *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). A forum-selection clause, however, trumps this consideration. *See Jumara,* 55 F.3d at 880. The Third Circuit explained that "while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." *Id.* at 880. Indeed, "a forum selection clause is treated

as a manifestation of the parties preferences as to a convenient forum." *Id.* Any "deference to the filing forum would only encourage parties to violate their contractual obligations." *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989); *see also Wieczenski v. The Brake Shop,* Civ. No. 93–5673, 1994 WL 111082, at *7 (D.N.J. Mar.28, 1994) ("[W]hen a party brings suit upon a contract that contains an enforceable forum selection clause, that party has already effectively 'chosen' the forum in which to litigate the dispute.") Accordingly, the Court places no weight on plaintiff's choice of forum.

With respect to the next factor—where the claim arose—Cadapult alleges that Tektronix made decisions, principally in Oregon, that resulted in injuries in New Jersey. Because both forums are implicated, this factor is not determinative.

Similarly, the Court finds that the factors concerning the location of witnesses and documents have little bearing. The Court should only consider these factors where "the witnesses may actually be unavailable" or where the documents may "not be produced in the other forum." *Jumara,* 55 F.3d at 879. Neither party has demonstrated the lack of availability of witnesses or documents.

Lastly, Cadapult cannot now be heard to decry the resultant litigation expenses and inconvenience associated with a transfer to Oregon. By executing a forum-selection clause, the parties to the agreement bear the risks of such inconvenience. *See Wieczenski,* 1994 WL 111082, at *8 (citing *Sparks Tune–Up Ctrs., Inc. v. Padussis,* Civ. No. 88–9525, 1990 WL 87283, at *2 (E.D.Pa. Jun.19, 1990)).

**6.** Tektronix claims that the instant case substantially overlaps with a pending case in the District of Washington, thus, justifying a transfer to Oregon. Although Cadapult strenuously disputes this issue, Tektronix argues that the parties are the same and the issues are related. Tektronix's argument is lost on the Court. A transfer to Oregon is not justified simply because a similar action is pending in Washington.

## 2. Public Factors

As to the first factor—the enforceability of a judgment, neither party argued, nor does the Court believe that the Oregon District Court cannot enforce a judgment as well as this Court.

The next factor—practical considerations for an easy, expeditious, or inexpensive trial—is also non-determinative. Because this case is at an early stage, practical considerations do not warrant its retention in this district. The Court is confident that District of Oregon can adjudicate this matter as efficiently as the District of New Jersey.[6]

Further, as to the next factor, the Court finds that both fora have an interest in deciding this case. Oregon has an interest in regulating the conduct of its corporations, while New Jersey has an interest in protecting its corporations.

Lastly, as to the public policy of the forum, the Court finds that New Jersey public policy weighs in favor of transfer. As discussed above, the policies of *Kubis* have no application in this case. Hence, New Jersey's general policy of upholding the validity forum-selection clauses is implicated. *See Caspi,* 323 N.J.Super. at 123, 732 A.2d 528.

Aside from *Kubis,* Cadapult argues that transfer would violate New Jersey public policy because an Oregon court may enforce a limitation on liability provisions found in the Value Added Dealer Agreement. This argument is misplaced. The Court is confident that both Oregon courts and New Jersey courts can fairly analyze and apply other state's laws.[7]

**7.** Cadapult also argues that Tektronix purposefully availed itself of Third Circuit law with regard to the preliminary injunction and now "seeks to jerk the case 3000 miles" to avail itself of Ninth Circuit law. Cadapult, citing to no statutory authority or case law, suggests that Tektronix's actions should prevent the transfer of this case. Cadapult's argument lacks merit.

In sum, upon review of the relevant factors, the Court believes that the "substantial consideration" due the forum-selection clause must be followed. Indeed, the Court finds that the forum-selection clause, viewed through the prism of its section 1404 analysis, leads only to one result—transfer. Accordingly, the Court will transfer this case to the District of Oregon.

## II. Dismissal

Tektronix also moved, pursuant to Rule 12, to dismiss the Complaint based on the forum-selection clause. In the context of this case, transfer, not dismissal, is the proper remedy. Indeed, the interests of justice, economy, and convenience point to transfer, rather than dismissal. If the Court dismissed the case, Cadapult must refile its complaint in Oregon. Such action may cause unnecessary delay to the resolution of this matter. Thus, the Court will not dismiss the Complaint.

## CONCLUSION

For the above stated reasons, the Court will grant defendant's motion to transfer to the Federal District Court of Oregon, pursuant to 28 U.S.C. § 1404(a), and the Court will deny defendant's motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.

---

The Court finds Tektronix has not acted improperly. Tektronix responded in this Court, on an emergent basis, to Cadapult's application for a preliminary injunction. After the Court denied the injunction, Tektronix promptly and properly brought this motion to transfer before the Court. *See* 28 U.S.C. § 1404(a).