**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4654-18

YORK MECHANICAL CORP.,

    Plaintiff-Appellant,

v.

KINNEY CONSTRUCTION
SERVICES, INC.,

    Defendant-Respondent.

_____

Submitted March 18, 2020 – Decided March 4, 2021

Before Judges Fuentes, Haas and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1229-19.

Skolnick Legal Group, PC, attorneys for appellant (Ronald W. Solares, on the briefs).

Cole Schotz PC, attorneys for respondent (Adam, J. Sklar, of counsel and on the brief; Arnold P. Picinich, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Plaintiff York Mechanical Corporation is a licensed contractor located in Union City that supplies and installs heating, ventilation, and air conditioning (HVAC) equipment. Defendant Kinney Construction Services, Inc., (KCS) is a construction service company located in Flagstaff, Arizona. At all times relevant to this case, defendant was the general contractor of a project located in Union City. Defendant hired plaintiff as a subcontractor to supply and install the project's HVAC equipment.

Plaintiff filed a civil action against defendant alleging breach of contract, unjust enrichment, quantum meruit, and violation of New Jersey's Prompt Payment Act (NJPPA), N.J.S.A. 2A:30A-1 to -2. Before joinder of issue, defendant filed a motion to dismiss plaintiff's complaint pursuant to Rule 4:6-2(e), based on the contract's forum selection clause, which provides that any litigation that arises from the parties' contractual relationship shall be brought in Coconino County, Arizona. After hearing oral argument, the Law Division granted defendant's motion and dismissed plaintiff's complaint without reaching the merits of plaintiff's substantive claims.

The dispositive issue raised in this appeal concerns the enforceability of the contract's forum selection clause. Plaintiff argues that enforcement of the

A-4654-18

forum selection clause violates the public policy codified by the Legislature in the NJPPA. Alternatively, plaintiff argues it never agreed to be bound by the contract's forum selection clause. Finally, even if we were to reject these two threshold arguments, plaintiff claims that litigating this case in Arizona would be seriously inconvenient and impair its ability to prosecute its case. Defendant argues otherwise.

After reviewing the record developed before the Law Division and mindful of our standard of review, we reject plaintiff's arguments and affirm substantially for the reasons expressed by Judge Vincent J. Militello in his oral opinion delivered from the bench, as supplemented by his subsequent memorandum of decision.

I

Plaintiff's principal place of business is located in Union City, Hudson County. Defendant is located in Flagstaff, Arizona. Genterra Enterprises, LLC, (Genterra) hired defendant as general contractor of the construction project known as Sanitas Horizon Kennedy Center (Sanitas), located on Kennedy Boulevard in Union City, approximately seven blocks from plaintiff's office.

As the general contractor, KCS hired all of the various trade subcontractors necessary to complete the Sanitas project. Through an online

portal, plaintiff submitted an HVAC subcontractor bid to defendant for the Sanitas project. Prior to the commencement of the bidding process, defendant sent an email to the bidders that stated: "Please send your proposal, BSA, [Blanket Subcontract Agreement] and any questions that you have about the project to the KCS employee responsible for your trade."

Plaintiff, through its representative Rick Agolli, downloaded the BSA on October 12, 2017. Defendant accepted plaintiff's $362,000 bid and awarded it the HVAC subcontract. On November 30, 2017, Agolli executed and returned the Purchase Order that outlined the goods and services plaintiff agreed to provide, as well as the BSA that contained the material terms of the parties' contractual relationship.

Although Agolli did not sign the BSA, he initialed each page of the Purchase Order and made various handwritten modifications and strikeouts of sections he found objectionable. The last page of the Purchase Order, which required Agolli's signature to complete the subcontract, expressly provided:

> This Purchase Order is subject to all of the terms and conditions of the Blanket Subcontract Agreement executed between the Subcontractor and Contractor. By signing this Purchase Order or commencing the work of this Purchase Order, the Subcontractor accepts all of the terms and conditions of the Kinney Construction Services Blanket Subcontract Agreement.

4

> This Purchase Order together with the Blanket Subcontract constitute the entire Subcontract[.]

The cover page of the BSA states: "This Blanket Subcontract Agreement together with an executed project specific Purchase Order describing the work and Subcontract amount constitute the Subcontract." The first paragraph of the first page of the BSA states: "The Contractor and Subcontractor understand that engagement to execute a specific contract for work shall be confirmed through the execution of a project specific Purchase Order . . . . Contractor and Subcontractor, for the consideration named in a project specific Purchase Order, agree as follows[.]"

The remainder of the BSA contains various references that highlight the incorporation of the BSA and the Purchase Order and makes clear that these two documents contain the material terms of the parties' contractual relationship. Indeed, Section 26.1 of the BSA, entitled "Entire Contract," provides: "This blanket subcontract agreement together with a written project specific purchase order describing the work and subcontract amount constitutes the entire subcontract between the parties." Of particular relevance here, Section 26.11 of the BSA, titled "Jurisdiction and Venue," provides:

> All terms of this Contract shall be governed by the laws of the State of Arizona. The jurisdiction and any suit or proceeding shall be in Coconino County, Arizona.

5

The ramifications of this provision reverberate throughout the BSA. For example, Section 4, entitled "Payments," provides that claims for payment are governed by Arizona's Prompt Payment Act, A.R.S § 32-1181 to -1188.[1] Section 25.2, listed as "Immigration and Control Act," and Section 25.3, listed as "Employee Background Checks," also apply Arizona law.

At some point after plaintiff began work on the subcontract, defendant terminated their contractual relationship. Plaintiff had been paid $112,000 of the $362,000 due under the contract.

Defendant's motion to enforce the contract's forum selection clause came for oral argument before Judge Militello. Plaintiff argued that the forum selection clause was unenforceable because "the blanket subcontract agreement was never signed." Furthermore, plaintiff maintained that the NJPPA required the action to be tried in New Jersey. However, in response to Judge Militello's questions, plaintiff's counsel conceded that "the Purchased Order was signed."

Defendant argued that the Purchase Order "[c]learly and unambiguously incorporates the blanket subcontract agreement." Thus, it was irrelevant whether the BSA was signed because the forum selection clause was

---

[1] This section of the BSA references the former citation of the Arizona's Prompt Payment Act, which is A.R.S § 32-1129 to -1129.07.

incorporated by reference in the Purchase Order. In response to plaintiff's invocation of the NJPPA as an insurmountable impediment to the enforcement of the forum selection clause, defendant's counsel argued that acceptance of plaintiff's position "would obviate every single forum selection clause in the construction industry." Defendant noted that plaintiff had not cited any authority to indicate that the Legislature intended to bring about such a radical departure from well-settled principles of contract law when it adopted the NJPPA.

At the conclusion of oral argument, Judge Militello granted defendant's motion and dismissed plaintiff's complaint. Relying on this court's opinion in Wilfred McDonald Inc. V. Cushman Inc., 256 N.J. Super. 58, 63-64 (App. Div. 1992), the judge found plaintiff did not produce any evidence that the forum selection clause "was the product of fraud or overweening bargaining power." The judge also found no basis to conclude that adherence to the forum selection clause would violate a strong public policy of this State or seriously inconvenience plaintiff. Finally, Judge Militello found the BSA was a part of the subcontract because the Purchase Order included an "incorporation clause expressly referencing all provisions of the BSA."

A-4654-18

This court "reviews de novo the trial court's determination of [a] motion to dismiss under Rule 4:6-2(e)." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). "Rule 4:6-2(e) motions to dismiss should be granted in 'only the rarest [of] instances.'" Banco Popular N. Am. v. Gandi, 184 N.J. 161, 165 (2005) (alteration in original) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 772 (1989)). To decide this motion, we must assume the facts asserted by plaintiff in its pleading are true and "give [it] the benefit of all inferences that may be drawn in [its] favor." Gandi, 184 N.J. at 166. However, "if the complaint states no basis for relief and discovery would not provide one, dismissal is the appropriate remedy." Ibid. Finally, we must determine whether the motion judge correctly interpreted the law and the legal consequences that flow from established facts, without giving his findings and legal conclusions any special deference. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Our Supreme Court has noted that "[i]f the language of a contract 'is plain and capable of legal construction, the language alone must determine the agreement's force and effect.'" Manahawkin Convalescent v. O'Neill, 217 N.J.

99, 118 (2014) (quoting <u>Twp. of White v. Castle Ridge Dev. Corp.</u> 419 N.J. Super. 68, 74-75 (App. Div. 2011)); <u>see</u> <u>also</u> <u>Watson v. City of E. Orange</u>, 175 N.J. 442, 447 (2003) ("Under our law, when the terms of a contract are clear and unambiguous, . . . the court must enforce those terms as written."). The same standard applies to integrated agreements. <u>YA Global Investments, L.P. v. Cliff</u>, 419 N.J. Super. 1, 11 (App. Div. 2011).

"'[U]nder New Jersey law, two or more writings may constitute a single contract even though they do not refer to each other. Whether two writings are to be construed as a single contract, however, depends on the intent of the parties.'" <u>Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn</u>, 410 N.J. Super. 510, 533 (App. Div. 2009) (alteration in original) (quoting <u>Van Orman v. Am. Ins. Co.</u>, 680 F.2d 301, 306 (3d Cir. 1982)). "The basic question is whether the parties assented to a writing as the complete integration of their agreement." <u>Alpert</u>, 410 N.J. Super. at 533. The court in <u>Alpert</u> cited to <u>Williston on Contracts</u> for the principle of incorporation by reference in a contract:

> Generally, all writings which are a part of the same transaction are interpreted together. One application of this principle is the situation where the parties have expressed their intention to have one document's provision read into a separate document. <u>So long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may</u>

> incorporate contractual terms by reference to a separate, non-contemporaneous document, including a separate agreement to which they are not parties, and including a separate document which is unsigned. . . . And, in order to uphold the validity of terms incorporated by reference, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.
>
> [Ibid. (alteration in original) (emphasis added) (quoting 4 Williston on Contracts § 30:25 (Lord ed. 1999)).]

Therefore, "[i]n order for there to be a proper and enforceable incorporation by reference of a separate document, the document must be described in such terms that its identity may be ascertained beyond doubt and the party to be bound by the terms must have had 'knowledge of and assented to the incorporated terms,'" even when a document that is incorporated is not signed. Alpert, 410 N.J. Super. at 533.

Here, the BSA was clearly identified as a part of the agreement between the parties in the Purchase Order. The reference to the BSA was located directly above where plaintiff signed the subcontract. The record shows plaintiff's representative carefully reviewed the Purchase Order and read each page. Plaintiff's representative made several modifications and strikeouts and placed his initials at the bottom of every page. The record includes information listed on the online bidding portal, including the time and date plaintiff downloaded

10

the BSA. This showed that plaintiff, a sophisticated business entity, acknowledged the BSA. Whether or not its representative reviewed the BSA before he executed the subcontract does not negate that the BSA was integrated by reference after it was clearly identified.

Additional evidence or extrinsic evidence was not required to determine whether the BSA was incorporated by reference. Judge Militello properly determined that the BSA was incorporated by reference into the agreement between the parties:

> After hearing arguments, I found that [p]laintiff had in fact consented to litigating all claims in Arizona, as evidenced by the Purchase Order. Specifically, I found it particularly telling that Mr. Agolli struck several provisions, added language to various sections, and initialed each page of the Purchase Order. For example, in Paragraph 7, Mr. Agolli crossed out the phrase "fully automated binding system." Moreover, in Paragraph 21 of the Purchase Order, Mr. Agolli made note that coating would not be provided, despite contractual language to the contrary. Although these changes may seem slight, they were significant for purposes of the motion. Each edit suggested that Mr. Agolli not only read the Purchase Order, but carefully reviewed each line of the contract, including the forum selection clause.
>
> . . . .
>
> In opposition to the underlying motion, [p]laintiff argued that [d]efendant was asking the court to "make an extreme logical leap by requesting enforcement of

11

an agreement that was never signed." See Pl. Opp. Brief, pg. 5. . . . In Alpert, the court addressed whether a signed agreement, incorporating an unsigned agreement, could bind the parties. There, the defendants retained the plaintiff in a legal malpractice action. At the commencement of the relationship, the defendants signed a Retainer Agreement. While noting some billing details, the Retainer Agreement did not outline the firm's billing practices and policies. Rather, the agreement referenced a second document, or "Master Retainer," that contained such details. The defendants thereafter challenged the validity of the Master Retainer, arguing that they neither signed nor assented to the terms of the Master Retainer.

The Alpert court acknowledged that New Jersey case law provides little guidance on the principle of incorporation by reference. Consequently, the court looked to Williston on Contracts[.]

. . . .

The Alpert court ultimately found that the Retainer Agreement did not define with sufficient specificity the Master Retainer. Rather, the Retainer Agreement simply reiterated that a client is bound "by our standard billing practices and firm policies." Alpert, supra, 410 N.J. Super. at 535. This, the court reasoned, was not specific or identifiable "such that the [firm's] practices and policies may be ascertained beyond doubt." Ibid. More importantly, the defendants were never shown a copy of the Master Retainer, and therefore, could not have assented to such. Unlike Alpert, [p]laintiff here had a copy of both the BSA and Purchase Order. Upon reviewing the Purchase Order, namely the incorporation clause, Mr. Agolli could have easily referred to the BSA. Similarly, the Purchase Order did

12

in fact specifically define the BSA. As noted, the clause in question stated:

> By signing this Purchase Order or commencing the work of this Purchase Order, the Subcontractor accepts all the terms and conditions of the Kinney Construction Services Blanket Subcontract Agreement. This Purchase Order together with the Blanket Subcontract constitute the entire Subcontract.

> Not only does this provision identify the BSA, but it also clearly provides that these two agreements constitute the entire Subcontract (emphasis added). A simple reading of this clause would alert a reader that by signing one document, he is in turn, assenting to a second document. Therefore, this court can in fact make such [a] logical leap to infer that [p]laintiff did assent to the terms of the BSA by signing the Purchase Order.

We thus hold that Judge Militello properly determined that the BSA and the Purchase Order constituted the entire subcontract between the parties.

III

We next consider whether the NJPPA prohibits the enforcement of forum selection clauses. N.J.S.A. 2A:30A-2(f) of the NJPPA provides:

> All contracts for the improvement of structures entered into after the effective date [Sept. 1, 2006] . . . between owners, prime contractors, subcontractors or subsubcontractors shall provide that disputes regarding whether a party has failed to make payments required pursuant to this section may be submitted to a process of alternative dispute resolution. Alternative dispute

13

resolution permitted by this section shall not apply to disputes concerning the bid solicitation or award process, or to the formation of contracts or subcontracts. <u>In any civil action brought to collect payments pursuant to this section, the action shall be conducted inside of this State and the prevailing party shall be awarded reasonable costs and attorney fees</u>.

[(emphasis added).]

Plaintiff argues that enforcement of the forum selection clause in the parties' agreement would violate the strong public policy underpinning the NJPPA. In support of this argument, plaintiff cites an unpublished opinion from this court. <u>Rule</u> 1:36-3 makes clear that absent certain exceptions not relevant here, "[n]o unpublished opinion shall constitute precedent or be binding upon any court." We thus will rely exclusively on published opinions from this court that have addressed the enforceability of forum selection clauses.

Defendant argues the forum selection clause does not eviscerate the public policy codified in the NJPPA because an Arizona court is just as capable of enforcing the public policy protections in the statute as a New Jersey court. Stated differently, defendant argues that the agreed upon venue for this dispute may consider the evidence on the issues raised by the parties and apply New Jersey law to determine whether plaintiff has presented a cognizable claim under the NJPPA.

A-4654-18

Defendant relies on our opinion in Wilfred, a case in which the plaintiff sought relief under the Franchise Practices Act, N.J.S.A. 56:10-1 to -31. The defendant moved to dismiss the plaintiff's Superior Court action and transfer venue to Nebraska pursuant to the franchise agreement's forum selection clause. 256 N.J. Super. 61.  Although the trial court recognized there were "substantial questions as to the applicability" of the Franchise Practices Act, it restrained the partial termination of the parties' contractual relationship to preserve the status quo. Id. at 62.

In the context of this dispute, we were asked to consider whether enforcement of the forum selection clause, which would result in the application of the Franchise Practices Act by another state, would be contrary to our State's public policy.  We found no public policy impediment and upheld the forum selection clause.  We noted that "[u]nderlying [the plaintiff's] notion is the premise that only New Jersey courts are equipped to properly interpret and apply the [Franchise Practices] Act and that to allow other state courts to do so would result in diverse and inconsistent applications." Id. 65.  We rejected this isolationist notion and held that the same way we presume that "our courts fairly and competently analyze and apply other states' laws, courts in our sister states are capable of construing and applying our State's laws."  Id. at 66.

A-4654-18

We also rejected a similar argument predicated on a section of the Franchise Practices Act which provides:

> Any franchisee may bring an action against its franchisor for violation of this act in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief. Such franchisee, if successful, shall also be entitled to the costs of the action including but not limited to reasonable attorney's fees.
>
> [N.J.S.A. 56:10-10.]

We held that unlike other statutes which expressly preclude foreign forum selection clauses, N.J.S.A. 56:10-10 did not explicitly preclude enforcement of a foreign forum selection in this context. Ibid. To conclude otherwise would constitute what the United States Supreme Court characterized in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972), as a "provincial" view.

In Hoffman v. Supplements Togo Management, LLC., we reaffirmed the analytical paradigm for determining the enforceability of forum selection clauses: "The courts of our State have generally enforced . . . forum selection clauses, where: (1) they are not the product of fraud or undue bargaining power, (2) they would not violate public policy, and (3) their enforcement would not seriously inconvenience the parties at trial." 419 N.J. Super. 596, 606 (App. Div. 2011), (citing Caspi v. Microsoft Network, L.L.C., 323 N.J. Super. 118,

16

122 (App. Div. 1999); Wilfred, 256 N.J. Super. at 63-64).  Applying this approach to the facts of this case, we discern no legal grounds to overturn Judge Militello's order enforcing the forum selection clause.

In Skuse v. Pfizer, Inc., our Supreme Court recently upheld an arbitration agreement that was disseminated by the employer to the employees via e-mail notice.  The e-mail apprised the recipient that it contained a "mandatory review of an agreement along with other relevant documents within a prescribed period, and digital confirmation that the employee has reviewed the materials provided." 244 N.J. 30, 57 (2020).  In upholding the validity of this electronic notice and the enforceability of the arbitration provision transmitted therein, the Court noted that

> no principle of New Jersey contract law bars enforcement of a contract because that contract is communicated by e-mail, rather than by the transfer of a hard-copy document.  If we were to adopt such a rule, it would invalidate contracts that have been negotiated and transmitted electronically for decades. We decline to do so here.
>
> [Id. at 54.]

In the course of its analysis, the Court in Skuse also approvingly quoted our opinion in Caspi, in which we upheld a duly negotiated forum selection clause because there "was nothing about the style or mode of presentation, or

17

the placement of the provision, that can be taken as a basis for concluding that the forum selection clause was proffered unfairly, or with a design to conceal or de-emphasize its provisions." 244 N.J. at 55, (quoting Caspi, 323 N.J. Super. at 125-26).

Against this legal backdrop, we decline to construe the NJPPA to provide an indiscriminate statutory injunction prohibiting the enforcement of a duly negotiated and agreed upon forum selection clause. We are satisfied that had the Legislature intended to adopt such a significant deviation from our State's contract law jurisprudence, it would have done so using clear, unequivocal language.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4654-18